HAWKEYE SECURITY INSURANCE COMPANY
*v.*
SHIELDS

1. INSURANCE—HOMEOWNER'S POLICY—BODILY INJURY—INTENTION-
ALLY-CAUSED INJURY.

> Clause in homeowner's insurance policy excluding insurer from
> liability for bodily injury caused intentionally by or at the
> insured's direction did not apply where the insured, a
> high school student, was in a street fight with a student
> from another high school, the student from the other school
> was struck by a classmate of the insured in the testicles,
> necessitating the removal of one testicle, the stipulated facts
> show that the insured did not strike the injured party in the
> groin area and that the insured did not direct his classmate
> to kick the injured party in the groin area.

2. INSURANCE—CRIMINAL ACTS OF INSURED—PUBLIC POLICY.

> Public policy prohibits a person from collecting additional in-
> surance benefits for his accidental death where the insured
> puts the accidental acts leading to his death in motion by
> a criminal act fraught with danger to his life by violent
> means.

3. INSURANCE—INTENTIONALLY-CAUSED INJURY—THIRD PARTY'S ACT
—IMPUTED INTENT.

> Third person's intent to injure another when he kicked the
> injured person in the groin was not to be imputed to the
> insured, also engaged in the street fight with the injured party,
> where the stipulated fact stated that the insured did not do
> the kicking that caused the injury or direct it to be done.

---

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 44 Am Jur 2d, Insurance §§ 1411–1413, 1430, 1445 *et seq.*
  Liability insurance:  Specific exclusion of liability for injury in-
  tentionally caused by insured.  2 ALR3d 1238.

4. INSURANCE—BODILY INJURY—INTENTIONALLY-CAUSED INJURY—
INTENTIONAL ACT.

A distinction exists between an intentional act and an intentionally-caused injury when determining the applicability of an insurance policy clause excluding coverage for bodily injury intentionally caused.

5. INSURANCE—BODILY INJURY—INTENTIONALLY-CAUSED INJURY—
THIRD PARTY'S ACT.

Insurer was liable under homeowner's policy obligating it to pay all sums which the insured became legally obligated to pay except bodily injury "caused intentionally by or at the direction of the insured", a high school student, where the insured was in a street fight, a student from another high school was injured in the testicles when kicked by a classmate of the insured, the insured did not do the kicking that caused the injury complained of and did not direct his classmate to kick the injured person, because the insurance policy concerns intentionally-caused injuries, not intentional acts.

Appeal from Kalamazoo, Wade Van Valkenburg, J. Submitted Division 3 October 9, 1970, at Grand Rapids. (Docket No. 9166.) Decided March 25, 1971.

Complaint for declaratory judgment by Hawkeye Security Insurance Company against Mary Jo Shields, Michael Shields, and William E. Burrell, himself and as next friend of James R. Burrell, to determine the plaintiff's obligation under an insurance policy to defend its insureds, Mary Jo and Michael Shields. Judgment for defendants. Plaintiff appeals. Affirmed.

*Phelps, Linsey, Strain & Worsfold* (by *Dale M. Strain*), for plaintiff.

*Huff, Deming & Hughey* (by *Quinn E. Benson*), for defendants Shields.

*Troff, Lilly, Piatt, File & Doyle* (by *Roger File*), for defendants Burrell.

Before: Holbrook, P. J., and R. B. Burns and
J. J. Kelley, Jr.,* JJ.

Holbrook, P. J. This action for declaratory judg-
ment was filed by plaintiff, Hawkeye Security Insur-
ance, against its insureds, Mary Jo Shields and
Michael Shields; and against William E. Burrell, in-
dividually and as next friend of James R. Burrell,
a minor, plaintiff in a damage action against Mi-
chael Shields and others.

The case was submitted to the trial court upon a
stipulation of agreed facts and briefs on the law.
The determination of this matter on appeal re-
quires a careful consideration of the facts and,
therefore, it is deemed proper to repeat the stipu-
lated facts:

"On or about January 15, 1966, Wayne Marks,
Burley Kiracofe, and Michael Shields were in a
vehicle operated by Wayne Marks which was pro-
ceeding from a Hackett High School basketball game
to Schwartz's Drive-in which is located on West-
nedge Avenue.    That the vehicle was proceeding
in an easterly direction on Kilgore Road.

"The three boys were students at Portage High
School and Hacket High School had won the bas-
ketball game.    The boys were upset over the loss of
said game.

"As the vehicle was proceeding down said Kilgore
Road, it came abreast of three other boys who were
walking on the northerly side of said road.    They
were students at Hackett High School, and appar-
ently an exchange of words took place at which point
someone in the vehicle yelled 'stop', and the vehicle
was brought to a stop.    That Wayne Marks, Burley
Kiracofe, and Michael Shields got out of said car
and either walked or ran across said Kilgore Road
towards the boys on the opposite shoulder at which

* Circuit judge, sitting on the Court of Appeals by assignment.

time one of the three boys on the north shoulder ran, leaving two boys present, one of said boys being James R. Burrell. That it was the apparent intent and desire of the three boys who had left the automobile to in fact stir up trouble and to get in a fight with the Burrell boy and his companions.

"During the course of the confrontation, Michael Shields did strike James R. Burrell in the shoulder and/or chest area; however, he did not kick or strike James R. Burrell in the region of the testicles. The three boys who had previously been in the car were the aggressors in the action, and they continued the assault until they were interrupted by a priest or some other person who came on the scene. When all three boys left the motor vehicle to confront James R. Burrell and his companions, it was their intent to get into a fight and they either intended or must be assumed to have intended that physical pain and/or injuries would be inflicted upon James R. Burrell and his companions. It is further agreed that neither James R. Burrell nor any of his companions were the aggressors and there is no claim of self-defense as regards Michael Shields for the purpose of this litigation.

"It is further agreed that for the purpose of this litigation, that during the course of the confrontation, Wayne Marks kicked James R. Burrell in the testicle, and that although Wayne Marks denies that he intentionally kicked him in that area, he thereafter stated, 'I got him good—right in the balls', and for the purpose of this litigation, it is admitted that it is Wayne Marks who actually inflicted the injury to the testicle.

*"It is further agreed that Michael Shields did not direct Mr. Wayne Marks to kick James R. Burrell in the testicle or groin area, and did not actually see the contact causing the injury.* As a result of the injury to the testicle, James R. Burrell required medical treatment for his injuries which included

the removal of one testicle which was irreparably damaged by the kick.

"All three boys, *i.e.,* Wayne Marks, Michael Shields, and Burley Kiracofe pleaded guilty to a charge of assault and battery arising out of the attack.

"Subsequent to the above, all of the above-named parties were joined in an eight-count complaint, a copy of which is on file.

"The Hawkeye Security Insurance Company which had issued a homeowner's insurance policy now denies coverage and/or liability for the liability of Mary Jo Shields and Michael Shields claiming that clause (c) of its special exclusions excludes liability for the injury to the testicle under the following language of the special exclusions:

" '(c) Under coverage E and F *to bodily injury or property damage caused intentionally by or at the direction of the insured.'*

"The defendants Burrell and Shields both take the position that the exclusion does not apply because the injury to the testicle was not intentionally inflicted by or at the direction of Michael Shields and as to Mary Jo Shields, that the exclusion is not applicable as to the vicarious liability of a parent created by statute." (Emphasis supplied.)

The trial court determined that the insureds (Shields) were covered by plaintiff's insurance policy as to the incident here involved.   Plaintiff has taken this appeal by leave granted.

The homeowner's policy issued by plaintiff to Mary Jo Shields provided coverage in part as follows:

"1.  Coverage E—Personal Liability:
(a) Liability: To pay on behalf of the insured *all sums* which the insured shall *become legally obligated to pay as damages because of bodily injury* or property damage,   *   *   *   .
*   *   *

"5. Supplementary Definitions:
(a) *'bodily injury'* means bodily injury, sickness or disease, including death resulting therefrom, sustained by any person;  *  *  *." (Emphasis supplied.)

Plaintiff claims that the trial court committed error by improperly interpreting the exclusionary clause in the policy which is stated as follows:

"(c) under Coverages E and F, *to bodily injury* or property damage *caused intentionally by or at the direction of the insured;*  *  *  *." (Emphasis supplied.)

It is universal law that the language inserted in an insurance policy by an insurance company is binding upon the insurer, and if ambiguous it must be construed strictly against the insurance company and in favor of the insured. *Hilburn* v. *Citizens' Mutual Automobile Insurance Company* (1954), 339 Mich 494; *Farm Bureau Insurance Company of Michigan* v. *Pedlow* (1966), 3 Mich App 478; *Michigan Mutual Liability Company* v. *Karsten* (1968), 13 Mich App 46; *Squires* v. *Hayes* (1968), 13 Mich App 449.

It is stated in the stipulated facts that it was Wayne Marks who kicked James R. Burrell in the groin which "caused" the "injury" to the testicle for which James Burrell seeks damages. It is also stated:

"It is further agreed that Michael Shields *did not direct* Mr. Wayne Marks to kick James R. Burrell in the testicle or groin area, and did not actually see the contact causing the injury." (Emphasis supplied.)

Upon the stipulated facts agreeing that *Mr. Shields* did not "cause" or inflict the "injury" or direct Mr. Marks to kick Mr. Burrell in the groin

which "caused" the "injury" for which Mr. Burrell seeks damages we must conclude that the exclusionary clause (the only exception to the coverage contained in paragraph E of the policy), does not relieve plaintiff of liability under the homeowner's policy of insurance issued to Mary Jo Shields. Because this may appear a too simple determination of the issue raised on this appeal taking into consideration the thorough briefs filed by the plaintiff with numerous cases cited and because there is no precedent directly in point controlling this case in our jurisdiction we discuss plaintiff's claims and some of the cases it asserts as being applicable.

Plaintiff asserts that it would be against the public policy of this state to insure against criminal acts committed by the insured and that this rule is applicable to the instant case, and cites several cases in support of its position which we deal with in order.

(1) *Acme Finance Company* v. *National Life Company* (1948), 118 Colo 445 (195 P2d 728), was an action by a criminal to recover for his wrecked automobile under the collision clause of an automobile insurance policy. The plaintiff had just committed a bank robbery and a murder and the auto was being pursued at the time by the police. The Court said, "If Calentino could recover on this policy under the facts hereinbefore recited gangsters can insure the cars used by them in bank robberies and murders and collect in full when they are wrecked by pursuing officers. All such contracts are universally held unenforceable as against public policy." This case is analogous to a man insuring his building against fire damage, and then burning it down to collect the insurance. This case is not applicable to the instant case.

(2) *Rousseau* v. *Metropolitan Life Insurance Company* (1937), 299 Mass 91 (11 NE2d 921), was a case where the policy holder of two life insurance policies attempted to collect additional death benefits providing for such payments when death results "solely through external, violent, and accidental means". Plaintiff was one of three that stole an automobile after an evening of drinking together. The police tried unsuccessfully to stop them and then pursued them until the car left the road because of its high speed and plaintiff was killed. The Court ruled that it would be against public policy to pay the additional payments where death resulted from a felonious stealing of an automobile and while the crime was still being committed. This is similar to the case set forth in (1) above. It would be against public policy for a person to insure himself for added benefits if his death was caused by accidental means, and then to put those accidental acts in motion by a criminal act fraught with danger to his life by violent means. The type of policy and the facts are just not analogous to the instant case and it is pointed out that the payment for the death was not contested.

(3) *DeMello* v. *John Hancock Mutual Life Insurance Company* (1932), 281 Mass 190 (183 NE 255), was a matter where plaintiff was a fisherman and at the time of death a member of a crew on a boat which was smuggling liquor in violation of Federal law. The Coast Guard, in stopping the boat, fired machine gun shots at the hull of the boat to disable it and cause it "to be hauled to". The death of the insured was caused by these shots fired at the boat. Plaintiff sought payment of added benefits for accidental death under a policy of life insurance. The Court denied recovery saying that death occurred while the insured engaged in the criminal act of

smuggling liquor contrary to Federal law and it would be against public policy to permit recovery for accidental death caused by the insured in the commission of a crime. This case is smiliar to case (2) above and the death benefits were not contested. It is not applicable to this case involving a homeowner's policy with specific liability and subject only to the exclusions therein contained.

We have no quarrel with the rules of law followed in the three cases reviewed above as applied to the facts and insurance policies therein present. However, plaintiff has failed to cite any case in our jurisdiction or elsewhere that would extend the public policy of our state so as to prevent the insured in the instant case from invoking the plain terms of the homeowner's insurance policy issued by plaintiff to Mary Jo Shields. In the absence of such precedent we decline to so extend the public policy of our state.

Plaintiff further asserts that the insured's son, defendant Mr. Shields, an admitted party to the assault, may be legally liable for all injuries sustained by the injured Mr. Burrell under the theory of law that in a concert of action case the acts of one are the acts of all[1] and, therefore, in this case the acts of Mr. Marks are imputed to Mr. Shields.[2] Because of this imputation by law which requires defendant Shields to answer for the acts of Marks, plaintiff would have us impute to Shields the intent to injure accompanying the act of Mr. Marks in kicking Mr. Burrell in the groin, when it is agreed that Shields did not do the act that caused the injury or direct it to be done.

---

[1] *King v. Herfurth* (1943), 306 Mich 444; *Fisher* v. *Rumler* (1927), 239 Mich 224.

[2] 6 CJS, Assault and Battery, § 27, pp 830–832.

Plaintiff cites several cases which we consider:

(1) *Wendell* v. *Union Mutual Fire Insurance Company* (1963), 123 Vt 294 (187 A2d 331), a case which held, "on the record before us it appears that the judgment rendered against the plaintiff in this action was founded upon an intentional act, an assault and battery. The policy issued by the defendant *did not cover* the plaintiff against the recovery of a judgment of this nature rendered against him". (Emphasis supplied.) The case is authority only for the ruling that under the policy terms it did not cover "any intentional act", and that an assault and battery was an intentional act. It is not authority for the claim of plaintiff as to imputation.

(2) *MacDonald* v. *United Pacific Insurance Company* (1957), 210 Or 395 (311 P2d 425), ruled that "[t]he policy clearly excludes from its coverage 'injury  *  *  *  caused intentionally by  *  *  * the insured' ". This is not applicable in the instant case because it is agreed that Shields did not intentionally cause the injury to Burrell and it was not done at his direction.

(3) *Pendergraft* v. *Commercial Standard Fire & Marine Co.* (CA 10, 1965), 342 F2d 427, is a case with a similar homeowner's policy of insurance. The insured came up from behind Pendergraft, spun him around, and struck him on the cheek just below the eye, which knocked Pendergraft down into the street, causing him to fall upon the pavement striking the back of his head with sufficient force to fracture his skull and render him unconscious. The exclusionary clause provided that liability would not extend "  *  *  *  to bodily injury or property damage caused intentionally by or at the direction of the insured". The *injury* was one *intentionally caused by the insured* and, therefore, was clearly

within the terms of the exclusionary clause, and the Court so ruled.

(4) *Heider* v. *Commercial Insurance Company* (1968), 248 Or 564 (436 P2d 268), dealt with liability on a comprehensive liability policy. Heider's employee had assaulted one Gowin and a judgment had been obtained against Heider as employer. The case is not applicable because it involved vicarious liability. The question was not whether or not the injury caused by the employee was "intentionally caused by or at the direction of the insured" but whether or not it was "accidental" within the meaning of the policy's exclusionary clause.

These cases do not support the claim of plaintiff as to imputing to Mr. Shields the *intentional causing of the injury* to Mr. Burrell by Mr. Marks. We, likewise, decline to adopt plaintiff's theory of law in this case.

We now consider the cases of *Putman* v. *Zeluff* (1964), 372 Mich 553, and *Morrill* v. *Gallagher* (1963), 370 Mich 578. The original action in *Putman, supra,* was against Zeluff for killing a hunting dog, and this case resulted in judgment for Putman. The case the Court was concerned with was a garnishment proceeding against Farm Bureau Mutual Insurance Company. The Court stated the question presented as follows:

" * * * under the foregoing facts, was the company's liability avoided by reason of the exclusion of damage or destruction to property caused intentionally by the insured, *i.e.,* Roger—to whom coverage extended."

The Court had no trouble in limiting the exclusionary clause to apply to only those injuries which were actually intentionally caused by the insured. They

noted that Roger intended to fire the weapon and that he intended to stop the onrush of the animal by shooting in its direction. It remained, however, a question of fact as to whether or not Roger *intended* to destroy the dog. The trier of facts found that he did not intend to destroy the dog but intended only to protect himself and to wound the onrushing animal. Therefore, the insurance company was liable in damages for the destruction of the animal and judgment against the garnishee defendant was affirmed.

In *Morrill, supra,* a case relied on in *Putman,* the Court also had no trouble in separating intent to cause injury from the act. The defendant in *Morrill* had thrown a "cherry bomb" into the area where plaintiff was working. Defendant intended only to scare him, but the explosion caused plaintiff serious impairment of his hearing and a nervous disorder. The Court, in holding the insurance company liable, stated at 370 Mich 588:

"Some emphasis is placed on exclusion (c) on the ground that in the instant case the firecracker was thrown intentionally. Unquestionably such was the case, but it will be noted that under the language of the excluding clause the *injury* must be caused 'intentionally'. There is nothing in this case to justify a conclusion that either Gallagher or Canfield *intended to cause any physical harm to plaintiff*. The language of the policy is binding on appellant, and if ambiguous it must be construed against appellant's claims in the instant controversy. It may not be interpreted as barring liability under the policy." (Emphasis supplied.)

The trial judge, in his opinion, relied on the Illinois case of *Smith* v. *Moran* (1965), 61 Ill App 2d 157 (209 NE2d 18). The court, in referring to that case, stated in its opinion as follows:

"Here a waitress was hit by a bullet which was not intended for her but for another person who was working in the same establishment. The court follows through on a well-reasoned opinion to the effect that the culprit in this case had no intention of injuring the plaintiff and therefore it was a result which was not expected. The court held that this was an unintentional result of an intended act and therefore the insurance company was liable under the homeowner's policy. Perhaps it should also be noted that the wording is almost identical with the one under consideration. The rule is summarized in the headnote [209 NE2d 18] and reads as follows:

" 'Injury caused to shooting victim who was hit by bullet when insured was shooting at victim's fellow employee was not "intentionally caused" by insured within the homeowner's policy excluding from coverage injury caused intentionally by or at direction of insured, but the injury was unintentional result of an intended act.' "

The key distinction here is that between intentional *acts* and intentional *injuries*. The appellant in *Smith, supra,* overlooked this distinction and directed the Court's attention to cases holding that the exclusionary clause would apply in such a case. The court, however, noted that the exclusionary clause in those cases cited stated that the insurance company would not be liable for damages caused by intentional *acts* of the insured. The case before the *Smith* Court, and the one before this Court relates to injuries caused intentionally by or at the direction of the insured. Also see, *Connecticut Indemnity Company.* v. *Nestor* (1966), 4 Mich App 578.

There is indeed a distinction between an intentional act and an intentionally-caused injury. We agree with the trial judge in his determination that

the *injury* to James Burrell was not *caused* intentionally by Michael Shields, or at his direction.

Affirmed. Costs to defendants.

All concurred.