**UNION INVESTMENT COMPANY, a Michigan Corporation, on behalf of its wholly-owned subsidiary Fort Wayne Mortgage Co., a Michigan Corporation, Plaintiff,**

v.

**FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Maryland Corporation, Defendant.**

**Civ. A. No. 4-71379.**

United States District Court,
E. D. Michigan, S. D.

Sept. 29, 1975.

Robert S. Bolton, Butzel, Levin, Winston & Quint, Detroit, Mich., for plaintiff.

Robert G. Russell, Kerr, Wattles & Russell, Detroit, Mich., for defendant.

## MEMORANDUM OPINION
## AND ORDER

JOINER, District Judge.

The sole question presented in this diversity action is whether plaintiff's losses are covered by a Finance Company Blanket Bond issued by defendant. Specifically, this court must determine whether certain writings relied on by the plaintiff are "securities, documents, or other written instruments" as defined in the bond.

In submitting this case for decision on the merits, the parties have stipulated to all the pertinent facts as follows:

1. The "Finance Company Blanket Bond" described in the complaint was issued by defendant to plaintiff and was in full force and effect at all pertinent times. . . .

2. On December 28, 1971, plaintiff's wholly-owned subsidiary, Fort Wayne Mortgage Co. ("Fort Wayne"), an additional insured under the Bond, as Lender, entered into a financing transaction with Lafayette Development Group Limited Divided Housing Associates ("Lafayette").

3. That pursuant to the aforesaid financing transaction, the following documents were executed:

a. A mortgage dated December 28, 1971 in the amount of $2,313,-600.00 wherein Fort Wayne was the mortgagee and Lafayette was the mortgagor.

b. A mortgage note dated December 29, 1971 in the principal amount of $2,313,600.00 in favor of Fort Wayne and signed by Lafayette and PYK Enterprises, Inc.

c. A building loan agreement dated December 29, 1971 executed by Fort Wayne and Lafayette consisting of PYK Enterprises, Inc., Carlos C. Carletos and Swiss Construction Company.

\*    \*    \*    \*    \*    \*

4. Fort Wayne was not required to make any advances on the loan unless it had received at the time of each advance the prior specific approval from the Secretary of Housing & Urban Development acting by and through the Federal Housing Commissioner that the advance when made would be insured.

5. The mortgage insurance issued by the FHA was evidenced by certificates of mortgage insurance. These certificates appear on an FHA form designated No. 2403. Under FHA procedures, a separate certificate of mortgage insurance is delivered to the mortgagee prior to each advance and insures the advances to be made. When Fort Wayne received a Form 2403 properly executed by FHA officials, it was required to advance to Lafayette the amount shown as approved for insurance on Form 2403 provided the same was also approved by Fort Wayne. The advance, when made, pursuant to a properly executed 2403 and if approved by Fort Wayne at least 30 days prior to the advance was insured by FHA.

6. The insurance afforded to Fort Wayne was that in the event of a default by Lafayette in the terms of the financing transaction, the FHA would protect Fort Wayne from loss by payment to it of so much of the principal and interest on the mortgage loans as had been approved for insurance.

7. Between August 4, 1972 and November 27, 1972, Fort Wayne was presented with seven Forms 2403, each authorizing disbursements of various sums of money, the same having been previously approved by Fort Wayne under the Building Loan Agreement. The Forms 2403 had never been presented to FHA. The signatures of the various FHA officials on each Form 2403 had been forged. The certificates of mortgage insurance were not in fact executed by FHA and the insurance allegedly represented by the certificates was in fact non-existent.

8. In reliance upon the Form 2403's and believing itself to be insured in the

amount disbursed, Fort Wayne paid out to or for the account of Lafayette the sum of $419,649.94.

9. By reason of the foregoing, Fort Wayne claims it suffered a loss in the amount disbursed, to-wit: $419,649.94.

10. The note and mortgage are assignable by the mortgagee only with the knowledge and consent of the Commissioner of the FHA. An assignee of the mortgage and note also receives an assignment and the benefit of the mortgage insurance.

The parties further agree:

1. The sole legal issue is whether Form 2403 is a "security, document or other written instrument" within the meaning of Coverage (E) of the Bond issued by defendant.

2. If the Form 2403 is a "security, document or other written instrument" within the meaning of Coverage (E) of the Bond issued by defendant, Fort Wayne is entitled to a judgment against defendant in the amount of $75,000, plus interest and court costs.

3. If the Form 2403 is not a security, document or other written instrument within the meaning of Coverage (E), defendant is entitled to a judgment of no cause for action.

The dispute centers on Coverage (E) of the insurance contract, wherein defendant agreed to insure plaintiff against:

"(E) Loss sustained by the Insured through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon, any securities, docu-

ments, or other written instruments which prove to have been

(a) counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity. . . ."

Defendant denies its liability under this provision by arguing that FHA Form 2403 is not a "security, document or other written instrument" within the terms of the insurance contract.

In determining the proper scope of a contract, primary attention must be focused on the expressed intent of the parties. Accordingly, this case should be resolved according to the specific definition contained in Coverage (E) of the Blanket Bond:

"Securities, documents or other written instruments shall be deemed to mean original (including original counterparts) negotiable or non-negotiable agreements in writing having value which value is, in the ordinary course of business, transferable by delivery of such agreements with any necessary endorsement or assignment."

Plaintiff properly divides this definition into five component parts, and asserts that FHA Form 2403 is "(1) an original (or counterpart) and is in writing; (2) is an agreement; (3) is negotiable or non-negotiable; (4) that it does have 'value' and (5) that said value is transferable in the ordinary course of business by delivery with any necessary endorsement or assignment."

FHA Form 2403 is an original application for insurance of advance of mortgage proceeds and the certificate of mortgage insurance issued by FHA. As such it is a written original agreement between FHA and the mortgage company. Thus it complies with requirements (1) and (2) above.

■ Plaintiff contends that the words "negotiable or non-negotiable" found in the definition under point (3) above are not words of limitation, but in fact serve to expand the scope of the definition. Plaintiff logically argues that any agreement which is not deemed to be negotiable under the U.C.C. is necessarily non-negotiable. Defendant contends, in response, that the words "negotiable or non-negotiable" indicate an intent to restrict coverage to "commercial paper and commercial documents". Unfortunately, defendant fails to muster either logic or outside authority in support of its position. The Official Comment to section 3–103 of the Uniform Commercial Code, M.C.L.A. § 440.3103, specifies that "commercial paper" refers only to *negotiable* instruments. Thus, it seems untenable to interpret the words "negotiable or non-negotiable" as restricting the scope of Coverage (E) to commercial paper or documents. The word "non-negotiable" must be given meaning.

The fourth requirement of the Coverage (E) definition is that an agreement must have "value" before it is a "security, document or other written instrument". Plaintiff asserts the obvious proposition that value is "a word of many meanings", and then looks to *Black's Law Dictionary* for three definitions of value: (1) "value in use": the utility of an object in satisfying various human needs, (2) "value in exchange": the power to purchase other objects, and (3) "any consideration sufficient to support a simple contract". Since the Blanket Bond does not specifically define value, plaintiff contends that a Form 2403 with any type of value will satisfy the terms of the contract. This point is supported by the well-established principle that courts should construe ambiguous terms "liberally in favor of the insured and against the insurer". *Mayer v. Credit Life Ins. Co.*, 42 Mich.App. 648, 650, 202 N.W.2d 521, 523 (1972).

■ It appears to the court that the Form 2403 exhibits all three types of value: (1) Form 2403 has "value in use"

because Fort Wayne's loans to Lafayette were conditioned upon the receipt of the form, (2) Form 2403 has "value in exchange" because Fort Wayne often "sells" its mortgages and accompanying security documents to other lenders, and (3) Form 2403 represents a consideration sufficient to support a simple contract because it is a promise executed by the FHA and is supported by Fort Wayne's mutual promise to advance funds to Lafayette. (Fort Wayne's promise was: "We intend to disburse said sum . . . provided we receive prior approval.")

Defendant challenges the alleged value of Forms 2403 by asserting that such forms have no "independent, innate or intrinsic value". To support this proposition, defendant notes the fact that mortgage insurance is normally not assigned without a concurrent assignment of the mortgage and note. Even assuming that Forms 2403 are never transferred independently, defendant fails to give any reason for interpreting "value" in such a restrictive sense and the court finds that such a restriction is not valid.

Defendant's only other argument for doubting the value of Forms 2403 is the bald assertion by the defendant that "mortgage certificates do not represent a promise to pay money, whether conditional or not, or any other obligation normally associated with commercial paper and commercial documents". This statement is totally inconsistent with paragraphs 5 and 6 of the parties' stipulation where Form 2403 is recognized as evidence of a promise by the FHA to pay money to Fort Wayne in the event of Lafayette's default.

The fifth and final component of the Coverage (E) definition of "securities, documents or other written instruments" is the requirement that the value of the agreement be "transferable in the ordinary course of business by delivery with any necessary endorsement or assignment". To prove that 2403 is transferable by assignment, plaintiff cites paragraph 10 of the parties' stipulation where it is agreed that "[a]n assignee of

the mortgage and note also receives an assignment and the benefit of the mortgage insurance". Furthermore, plaintiff notes that interim lenders often transfer Forms 2403 in the ordinary course of their business.

Defendant's counterarguments are that (1) there is no established market for the transfer of *individual* certificates and (2) it is extraordinary to transfer mortgage insurance in connection with mortgage assignments. Since the first point is clearly dependent on the previous discussion of value (*i. e.*, whether individual forms must have a separate intrinsic value), defendant's argument essentially focuses on the extraordinary nature of insurance transfers.

Defendant's unsupported assertion that insurance transfers are extraordinary is matched against plaintiff's unsupported assertion that interim lenders customarily engage in such transfers. Both common sense and the parties' stipulations, however, indicate the superiority of plaintiff's position. Since defendant only denies that insurance forms are ordinarily transferred along with mortgages but does not deny that mortgages are ordinarily assigned, defendant is again making an argument which is inconsistent with the stipulated facts —paragraph 10 recognizes that whenever a mortgage is assigned, the assignee also receives an assignment of the mortgage insurance.

From the contractual definition alone, it is apparent that Form 2403 is a "security, document or other written instrument" within the coverage of the Blanket Bond. Furthermore, even if some ambiguity is perceived in the definition, the ambiguous terms must be construed liberally in favor of the insured party. *See Gorham v. Peerless Life Insurance Co.*, 368 Mich. 335, 343, 118 N.W.2d 306 (1962); *Hawkeye Security Insurance Co. v. Shields*, 31 Mich.App. 649, 654, 187 N.W.2d 894 (1971). Consequently, it is not neces-

sary to look beyond the face of the Blanket Bond to resolve this case.

■ Even in the absence of the parties' definition, however, a common sense interpretation of "securities, documents or other written instruments" would favor plaintiff's assertions. In addition, existing case law tends to support a liberal construction of the disputed terms. Although no court has previously considered the contractual definition which is central to this case, several courts have dealt with Coverage (E) before the definition was added. These cases, while not directly on point, generally favored a broad interpretation of the term "securities, documents or other written instruments". *E. g.*, *Snyder National Bank v. Westchester Fire Insurance Co.*, 425 F.2d 849 (5th Cir. 1970); *American Insurance Co. v. First National Bank in St. Louis*, 409 F.2d 1387 (8th Cir. 1969).

Defendant concedes that the case law is generally unfavorable to its position but argues that these cases were superseded by the addition of the definition of "securities, documents or other written instruments" in the current bond. According to defendant, the history of Coverage (E) proves that the contractual definition was added to the standard bond in order to avoid the effect of liberal case law which had overextended Coverage (E). To support this historical interpretation, defendant cites an article in 39 *Insurance Counsel Journal* 305 (July 1972). This article gives no support to defendant's contention except to point out that in the future the courts will necessarily have to examine a contractual definition of terms rather than looking outside the contract for their definition. This is what was done in this case. Nowhere does the cited article indicate that the new definition was intended to limit "securities, documents or other written instruments" to "securities or documents *like* securities".

The court holds, therefore, that FHA Form 2403 is a "security, document or other written instrument" within the

Coverage (E) definition and that defendant is liable to plaintiff under the Blanket Bond. Consistent with the maximum coverage specified in the bond, damages are adjudged to be $75,000.00, plus interest and court costs.

A judgment should be entered accordingly.

So ordered.