UNION INVESTMENT COMPANY, a Michigan Corporation, on behalf of its wholly-owned subsidiary Fort Wayne Mortgage Co., a Michigan Corporation, Plaintiff-Appellee,

v.

FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Maryland Corporation, Defendant-Appellant.

No. 76–1027.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1976.

Decided Feb. 23, 1977.

---

Robert G. Russell, Kerr, Wattles & Russell, Robert R. Nix, II, Detroit, Mich., for defendant-appellant.

Robert S. Bolton, Butzel, Levin, Winston & Quint, Larry K. Griffis, Detroit, Mich., for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

The question presented on this appeal is whether forged Federal Housing Administration Certificates of Mortgage Insurance were covered by a blanket bond issued by Fidelity and Deposit Company of Maryland (Fidelity), the defendant-appellant. Union Investment Company (Union), the plaintiff-appellee, through a wholly owned subsidiary, relied upon the forged certificates in advancing mortgage money. In an opinion reported at 400 F.Supp. 860 (E.D.Mich. 1975), District Judge Charles W. Joiner held

that the certificates were "securities, documents or other written instruments," as defined in the finance company blanket bond issued by Fidelity, and that Union's losses resulting from the forged certificates were covered by the blanket bond. Fidelity appeals. We affirm.

Jurisdiction is based upon diversity of citizenship and Michigan law controls. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although we have not found any reported Michigan decision squarely in point, we are satisfied that the District Court correctly applied the law of that State.

Union's wholly owned subsidiary, Fort Wayne Mortgage Company (Fort Wayne), entered into a financing transaction with Lafayette Development Group Limited Dividend Housing Associates (Lafayette), whereby Fort Wayne would provide Lafayette with funds for federally subsidized housing under § 236 of the National Housing Act.[1] A mortgage dated December 28, 1971, in the amount of $2,313,600 was executed, wherein Fort Wayne was the mortgagee and Lafayette was the mortgagor. The mortgage was to be insured by the Federal Housing Authority (FHA).

Prior to each advance under the mortgage, a separate certificate of mortgage insurance was to be issued by the FHA on Form 2403 to insure that advance against a default by Lafayette. Between August 4, 1972, and November 27, 1972, Fort Wayne received seven Forms 2403 bearing forged signatures of FHA officials. In reliance on these forms Fort Wayne disbursed $419,-649.94 for the benefit of Lafayette. However, the forms had not been presented to the FHA and, in fact, the insurance allegedly represented by the certificates was never in existence. Fort Wayne never recovered from Lafayette the money it had loaned.

The details of the agreement are set forth in the stipulation of facts quoted in the opinion of the District Court. 400 F.Supp. at 861.

Fort Wayne attempted to recoup some of its losses by filing a claim under the blanket bond executed by Fidelity. This bond provided indemnity against various losses, including those sustained from extending credit in good faith upon "any securities, documents or other written instruments" which proved to have been forged. The pertinent part of the bond states that it covers:

#### SECURITIES

(E) Loss sustained by the Insured through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon, any securities, documents or other written .instruments which prove to have been

(a) counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or

(b) raised or otherwise altered or lost or stolen;

The bond defines "securities, documents or other written instruments" as follows:

Securities, documents or other written instruments shall be deemed to mean original (including original counterparts) negotiable or non-negotiable agreements in writing having value which value is, in the ordinary course of business, transferable by delivery of such agreements with any necessary endorsement or assignment.

Fidelity denied liability under the bond and Union filed the present suit. The District Court awarded Union a judgment for $75,000,[2] plus interest and court costs. On

---

1. 12 U.S.C. § 1715z-1 (1969).

2. The maximum coverage under the provisions of the bond was $75,000.

appeal the only issue is whether FHA Form 2403 is a security, document or other written instrument, within the meaning of the bond.

■ In determining whether the bond provides coverage, the agreement must be construed so as to effectuate the intent of the parties. *See Sobczak v. Kotwicki*, 347 Mich. 242, 249, 79 N.W.2d 471 (1956); *Piasecki v. Fidelity Corp.*, 339 Mich. 328, 337, 63 N.W.2d 671 (1954).

Fidelity's principal contention is that the words "securities, documents or other written instruments" as used in Clause (E) of the bond are restricted to securities and do not extend to any other type of document upon which a financial institution may rely and suffer a loss. Fidelity in effect asserts that the words "securities, documents or other written instruments" mean nothing more than securities. It is argued that this interpretation is strengthened by the fact that the pertinent section of the contract is captioned "Securities."

■ We do not agree. In *American Insurance Co. v. First National Bank*, 409 F.2d 1387 (8th Cir. 1969), the Eighth Circuit stated:

[T]he conclusion that the words "documents or other written instruments" extend coverage beyond securities is inescapable. To hold otherwise would in effect be holding that the words "documents and other written instruments" were placed in the Clause (E) for no purpose at all.

*See also Snyder National Bank v. Westchester Fire Insurance Co.*, 425 F.2d 849, 852 (5th Cir. 1970). (Quoting the foregoing Eighth Circuit language with approval.)

■ A contract will not be construed so as to reject any words as surplusage if they reasonably can be given meaning. *Vary v. Shea*, 36 Mich. 388, 398 (1877). An insurer has a duty to express clearly the limitations of its policy. *Ornamental Iron & Stair Co. v. General Accident & Life Assurance Corp. Ltd.*, 68 Mich.App. 259, 242 N.W.2d 544 (1976). If Fidelity had intended to include only securities and documents

similar to securities, it could have used express language to that effect.

■ We agree with Judge Joiner's analysis of the definition of "securities, documents or other written instruments." He divided the definition into five components according to whether the document in question was:

(1) an original (or counterpart) in writing; (2) an agreement; (3) negotiable or non-negotiable; (4) valuable; and (5) whether the value was transferable in the ordinary course of business by delivery with any necessary endorsement or assignment.

He then satisfied himself that FHA Form 2403 fulfilled each of the above criteria. We do not agree with Fidelity's contention that the definition is not susceptible to such analysis or that the interpretation adopted by the District Court distorts the meaning of the definition as a whole.

■ Fidelity argues that the words "negotiable or non-negotiable" in the definition indicates a restriction of coverage to commercial paper and commercial documents. It is asserted that the word "non-negotiable" was used so as to include commercial paper and commercial documents that do not meet all the technical requirements for negotiability under the Uniform Commercial Code, but are similar to securities. See M.C.L.A. § 440.8102(1)(b) (1967). We hold that the District Court was correct in rejecting this contention. The logical effect of these words "or non-negotiable" is to expand, not restrict, the coverage of this bond.

Next it is contended that Form 2403 does not fall within the definition of a security, document or other written instrument because it does not have value. Since value is not defined in the bond, it is to be construed in the ordinary and popular sense. *Dittus v. Geyman*, 68 Mich.App. 433, 437, 242 N.W.2d 800 (1976); *Cora v. Patterson*, 55 Mich.App. 298, 300, 222 N.W.2d 221 (1974). We agree with the District Court that Form 2403 has value under any of the commonly accepted meanings. Fidelity argues that

the bond only covers documents having independent and intrinsic value. We find no basis for such a restricted definition of value.

Fidelity further asserts that Form 2403 is not transferrable in the ordinary course of business. Paragraph 10 of the stipulation of the parties expressly provides that "[a]n assignee of the mortgage and note also receives an assignment and the benefit of the mortgage insurance." 400 F.Supp. at 862. Further, the District Court found that interim lenders often transfer Forms 2403 in the ordinary course of their businesses.

Finally, Fidelity argues that the evolution of case law by the courts under the old blanket bond form had greatly expanded the coverage of the policy. As a result, in 1969 insurers changed the form and added a definition of "securities, documents or other written instruments." These changes, appellant contends, were designed to curtail the coverage of this bond. Nevertheless, we are not persuaded that these changes excluded coverage of certificates of mortgage insurance.

Language in an insurance contract is construed strictly against the insurer. *Nickerson v. Citizens Mutual Insurance Co.*, 393 Mich. 324, 330, 224 N.W.2d 896 (1975). Even if the new definition adopted in 1969 is considered ambiguous, any ambiguity is construed in favor of the insured and against the insurer. *Gorham v. Peerless Life Insurance Co.*, 368 Mich. 335, 343, 118 N.W.2d 306 (1962); *Wolverine Insurance Co. v. State Automobile Mutual Life Ins. Co.*, 415 F.2d 1182, 1189 (6th Cir. 1969).

Affirmed.