**HOME SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellee.**

No. 84–1014.

United States Court of Appeals, Fourth Circuit.

Argued Aug. 6, 1984.

Decided Sept. 4, 1984.

Rehearing and Rehearing En Banc Denied Oct. 25, 1984.

Henry C. Doby, Jr., Albemarle, N.C. (Doby & Beaver, Albemarle, N.C., on brief), for appellant.

John R. Ingle, Charlotte, N.C. (Susan L. Sowell, Craighill, Rendleman, Ingle & Blythe, P.A., Charlotte, N.C., on brief), for appellee.

Before RUSSELL, HALL and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Home Savings and Loan Association (the "Association") appeals from an order of the

district court granting summary judgment for Fidelity and Deposit Company of Maryland ("Fidelity") on the ground that an attorney's certificate of title is not a "security, document or other instrument" within the coverage of the blanket bond issued by Fidelity to the Association. We reverse.

## I.

In the fall of 1980, the Association agreed to loan $46,500 to Tranquil Bay Development Corporation ("Tranquil Bay"). The loan was to be secured by a deed of trust constituting a first lien encumbering a parcel of land owned by Tranquil Bay. In making the loan, the Association relied upon a certificate of title purportedly signed by James A. Phillips, Jr., a local attorney, stating that the land was free and clear of all encumbrances except certain restrictive covenants and that the deed of trust held by the Association constituted a valid and subsisting first lien upon the land.

Tranquil Bay defaulted, and the Association discovered that it did not enjoy a first lienholder's status but was junior to a deed of trust from Tranquil Bay to the First National Bank of Albemarle ("First National"). The Association also discovered that the certificate of title had in fact been forged by the president of Tranquil Bay. First National subsequently foreclosed its lien, exhausting the proceeds of the foreclosure sale. The Association has been unable to collect $46,182.79 of the $46,500 loaned to Tranquil Bay.

At all times during these events, the Association was covered by a savings and loan blanket bond issued by Fidelity. The pertinent part of the insuring agreement protects the Association against:

(E) Loss through the Insured's having, in good faith and in the course of business, purchased or otherwise acquired, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon, any securities, documents or other written instruments which prove to have been

(a) ... forged as to the signature of any maker, ... or as to the signature of any person signing in any other capacity ....

"Securities, documents or other written instruments" are defined by the bond contract as "original (including original counterparts) negotiable or non-negotiable agreements in writing having value which value is, in the ordinary course of business, transferable by delivery of such agreements with any necessary endorsement or assignment."

After its claim under the insuring agreement was denied by Fidelity, the Association instituted this action in state court, seeking to recover the amount of its loss. Fidelity removed the action to federal district court and answered, denying that the bond covered the loss.

The parties filed cross-motions for summary judgment. The Association claimed that the loss it incurred in making the real estate loan based upon the forged attorney's certificate of title was covered by the terms of the insuring agreement. Fidelity argued that such a certificate of title was outside the scope of the policy.

The district court found that an attorney's certificate of title is not within the definition of "securities, documents or other written instruments" set forth in the bond, granted Fidelity's motion for summary judgment, and denied the Association's motion. The court reasoned that an attorney's certificate of title is not "transferable in the ordinary course of business by delivery with any necessary endorsement or assignment." Judgment was entered dismissing the action. The Association appeals.

## II.

The Association's primary contention on appeal is that the forged certificate of title falls within the definition of "securities,

documents or other written instruments" of the policy.* We agree.

■ The definition of what may be considered "securities, documents or other instruments" can be divided into five components. The instrument in question must be (1) an original (or counterpart) in writing; (2) an agreement; (3) negotiable or non-negotiable; (4) must have value; and (5) that value must be transferable in the ordinary course of business by delivery with any necessary endorsement or assignment. *Union Investment Co. v. Fidelity & Deposit Co.*, 400 F.Supp. 860, 862 (E.D.Mich. 1975), *aff'd*, 549 F.2d 1107 (6th Cir.1977).

■ The Association urges that the forged attorney's certificate of title meets all five components of the definition. It is undisputed that the certificate is an original and in writing, is negotiable or non-negotiable, and has value. The Association argues that the certificate is both an agreement and has transferable value because an attorney's certificate of title is an integral and essential part of a real estate loan transaction. We agree and conclude that the district court erred in considering the certificate of title apart from the underlying loan transaction. In its loan application, Tranquil Bay agreed that the loan would be secured by a first mortgage or deed of trust on its real property. In accepting the Association's loan commitment offer, Tranquil Bay agreed that the loan would be made subject to certain conditions, one of which was that the loan be secured by a first lien upon the real property. Clearly, an attorney's certificate of title was an implicit condition of the transaction. But for the certificate stating that the Association had a first lien on the property, the Association would not have made the loan to Tranquil Bay. We find that the nature of the loss sustained in this case is exactly what the Association intended to cover when it took out the insurance policy with Fidelity.

Moreover, in its regular course of business, the Association could sell real estate loans it originated to other financial institutions and could purchase loans originating with other institutions. In buying and selling such loans, the promissory note evidencing the loan and the deed of trust or mortgage securing payment of the note are assigned and transferred to the purchaser. The various supporting documents, including the attorney's certificate of title, are also transmitted to the purchaser. The attorney's certificate of title is an integral part of the whole package given to the purchaser of the loan. Unlike the situation where the real property itself changes hands, a subsequent purchaser of the loan will ordinarily not engage another attorney to update the state of the title. The interests of any subsequent purchaser of the loan are protected by the recorded deed of trust. The attorney's certificate of title, which is transmitted to the purchaser along with the assigned note and deed of trust or mortgage, assures the purchaser of the loan of the dignity of his security.

For the foregoing reasons, we hold that an attorney's certificate of title is a "security, document or other written instrument" within the coverage of the blanket bond issued by Fidelity. The judgment of the district court is reversed.

REVERSED.

---

* The Association also contends that its conduct in the loan transaction was "in good faith and in the course of business" as required by the insuring agreement. Fidelity counters that this issue is not properly before this Court. We agree.

Discovery revealed that the Association never had any contact whatsoever with the designated certifying attorney. Fidelity, therefore, alleged, in an amendment to its answer, that the Association was negligent and did not act in good faith and in the course of business in delivering the loan documents to Tranquil Bay instead of to the designated certifying attorney.

When Fidelity moved for summary judgment, however, it did not argue this issue as a ground for its motion. Fidelity's sole ground for its motion was that an attorney's opinion or certificate of title is not a "security, document or other written instrument" as defined by the bond. Consequently, the district court's memorandum opinion did not address the issue of whether the Association acted in good faith and in the course of business, and we do not decide it now for the first time on appeal.