HOOPER *v.* STATE MUTUAL LIFE ASSURANCE COMPANY
OF WORCESTER, MASSACHUSETTS.

1. INSURANCE — DOUBLE INDEMNITY — ACCIDENT — HOMICIDE — EVIDENCE.

In action under life insurance policy to recover double indemnity
for alleged accidental death of insured, ruling of trial court
that death was a case of homicide, *held,* correct, as against contention of plaintiff beneficiary that the jury could have found
that the death was the result of the act of one with a deranged
mind, or the result of an accident other than murder, in view
of evidence showing several bullet holes in insured's body
which was also badly burned.

2. SAME—ACCIDENT—HOMICIDE.

An intentional homicide is an accident, within the meaning of
an accident policy, if insured himself was in no way responsible for his death.

3. SAME—ACCIDENT—INTENTIONAL HARM.

Where insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the
insured, but is unforeseen insofar as he is concerned, the
injury is accidental within the meaning of accident policies.

4. SAME—MURDER—ACCIDENT.

Although the murder of an insured was an act of malicious design on the part of the murderer, it was an accident so far
as insured was concerned.

5. SAME—AMBIGUITY—CONSTRUCTION OF POLICY.

An ambiguity in an insurance policy, prepared by the insurer,
must be resolved against the insurer.

6. SAME—CONSTRUCTION OF POLICY FAVORABLE TO INSURED.

A policy of insurance, couched in language chosen by the insurer, must be given the construction of which it is susceptible most favorable to the insured.

7. SAME—TECHNICAL CONSTRUCTION OF POLICY NOT FAVORED.

Technical constructions of insurance policies are not favored.

8. SAME—CONSTRUCTION OF EXCEPTIONS TO GENERAL LIABILITY UNDER POLICY.

Exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer.

9. SAME—HOMICIDE—DEATH—DOUBLE INDEMNITY FOR ACCIDENTAL DEATH—CONSTRUCTION OF POLICY.

Under life insurance policy providing that the double indemnity provision for accidental death did "not cover homicide or death resulting directly or indirectly from" 12 enumerated exceptions the phrase "resulting directly or indirectly from" is construed as modifying either "homicide" or "death" or both words, in every exception accordingly as the nature of the exception will admit, hence, in case · death were due to homicide it would be no ground for recovery if the homicide resulted directly or indirectly from a condition listed in one of the exceptions.

10. SAME—ACCIDENT—BURDEN OF PROOF.

When an action is brought upon an accident policy or upon the double indemnity provision of a life policy, it is incumbent upon plaintiff to show that death occurred through accidental means.

11. SAME—SUICIDE—ACCIDENT—BURDEN OF PROOF—OTHER EXCEPTIONS RELIEVING DEFENDANT OF LIABILITY.

In an action upon provision of a life insurance policy granting double indemnity in case of accidental death, where insurer interposes defense of suicide, it is incumbent upon the plaintiff to show that it was not suicide, but where defense is that death was within other exceptions relieving insurer from liability, insurer has burden of showing death was within such other exceptions.·

12. SAME—BURDEN OF PROOF—ACCIDENT—MURDER.

Plaintiff met burden of proof under double indemnity provision in case of accidental death under life insurance policy by showing that insured was murdered.

13. SAME—HOMICIDE—ACCIDENT—DOUBLE INDEMNITY—EXCEPTIONS.

Fact that death of insured was a homicide does not bar liability under the double indemnity provision of life insurance policy where it does not appear to have been due to any exception relieving defendant from liability under such provision of the policy.

BUTZEL, BUSHNELL, and DETHMERS, JJ., dissenting.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 8, 1947. (Docket No. 17, Calendar No. 43,353.) Decided June 27, 1947. Rehearing denied October 13, 1947.

Assumpsit by Callienetta Hooper against State Mutual Life Assurance Company of Worcester, Massachusetts, on double indemnity provision of a life insurance policy. Directed verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Cobb & Nielson* (*G. Randall Price,* of counsel), for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin,* for defendant.

REID, J. This is an action at law on a policy of life insurance issued on January 31, 1941, to Warren G. Hooper, husband of plaintiff. Subject to certain limitations, the policy contained a double indemnity clause providing for $10,000 additional payment if insured's death were caused by accident. Other than the double indemnity clause, the remaining provisions of the policy and the amount of insurance payable thereunder are not in dispute and are enforceable without let or hindrance by reason of this decision. The case was tried upon an issue as to liability for the payment of the $10,000 provided for in the double indemnity clause. At the close of plaintiff's proofs the trial court directed a verdict for defendant. From the judgment entered thereon, plaintiff appeals.

The disputed questions involved are: (1) Is the testimony sufficient to establish as a matter for the court's determination that deceased was murdered

or could the jury have properly found that his death was caused by some means not amounting to murder? (2) What is the proper construction to be given to the double indemnity provisions of the policy? Those provisions as far as pertinent are as follows:

"Supplementary agreement for double indemnity in case of death from accidental means herein limited and provided

"Issued as a part of policy No. 513, 135A and attached thereto.

"In consideration of the application for this agreement, and of a special annual premium of $15.50, payable under the same conditions, in addition to, and as a part of, each regular annual premium due under said policy on the life of WARREN G. HOOPER during the remainder of its premium paying period, or until the insured reaches the age of 65 years, the STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, MASSACHUSETTS, here grants the following double indemnity provision:

"If, while no premium is in default under this policy and double indemnity agreement, due proof shall be furnished that the death of the insured occurred before he reached the age of 65 years as the result of accidental drowning or bodily injuries sustained or contracted after the date hereof and effected solely through external, violent, and accidental means, directly and independently of all other causes, within 90 days after such injury was sustained, which injury is evidenced by a visible contusion or wound on the exterior of the body, (except in case of drowning and internal injuries revealed by an autopsy), the company agrees that, subject to the conditions and provisions specified herein, it will pay $10,000 or the sum specified as the amount of insurance on the first page of this policy contract (whichever is greater), in addition to the face amount of the said policy. Unless otherwise re-

quested, this said additional payment will be made to the beneficiary or beneficiaries designated in the said policy and paid in a single cash payment upon receipt of due proof of death as aforesaid.

"This provision shall not cover homicide or death resulting directly or indirectly from self-destruction or any attempt thereat while sane or insane; or the commission of assault or felony by the insured; combat, war or any act of war; participation in an insurrection, riot, or strike; travel, or flight in any aircraft or balloon, or from being in, on, or about any kind of aircraft or balloon; participation in submarine operations, or descent or riding in a submarine; from any physical or mental disease, illness, or infirmity; from sickness resulting from the eating of any form of food or drinking of any form of liquid; hemophilia; or bacterial infection other than that occurring in connection with, or in consequence of, accidental bodily injuries; or from any kind of poisoning, whether voluntary or otherwise, or asphyxiation; or from carbon monoxide or gas, or fumes, of any kind, voluntary or involuntary, accidental or otherwise, taken, administered, absorbed, or inhaled. The company shall have the right and opportunity to examine the body and make an autopsy unless prohibited by law.

"The incontestability clause contained in the said policy is hereby modified so as to read as follows: 'Except for nonpayment of premium and except as to provisions and conditions granting double indemnity in case of death from accident contained in the supplementary agreement attached to and made a part of this policy, this policy shall be incontestable after it has been in force for full two years from the date of its issue.' "

Testimony was produced to show the following facts: The insured at the time of his death was a State senator. A "one-man" grand jury had been conducting inquiry at Lansing concerning allega-

tions of bribery of various members of the State legislature; insured was a witness before the grand jury; plaintiff testified she knew insured was helping the grand jury. The witness Modjeska, traveling south on the road between Lansing and Springport about 4:45 p.m. on January 11, 1945, saw insured's Mercury sedan parked on the wrong side of the road about two miles north of Springport, headed south, with the left rear end off the road, with smoke coming out of the side door; witness could not see inside the car; on the right rear door there was a hole in the glass like a bullet hole. The witness stopped nearby and waited for about five minutes for some other person to come. While he was waiting, Modjeska walked to the front of the car and saw footprints on the left side of the car at the driver's door; there were no footprints coming to that step from either direction but just footsteps (in the snow) going away. Mr. VanNocker was the first man to come along, and he was followed by Mr. Howard. The three men went to the Mercury to investigate and upon Mr. Howard opening the left rear door, flames seemed to start up in the back seat from the air being admitted. The men closed the rear door and opened the front door, and saw the insured sitting there slumped over to the left toward the wheel. They saw no weapon in the car. Upon the flames starting up, they closed the door. Modjeska told the two other men that they could take the body out of the car if they desired to, and Modjeska went to call the State police; when he came back the body was outside the car. Modjeska later at the funeral home saw the same body. There were the marks of three bullets in the head, one behind the right ear, one right under the left eye and one on top of the head; there was a fourth hole where one of the bullets had come out. Wit-

ness Mr. Hoffman, the undertaker who took Senator Hooper's body to Springport, testified that apparently some one had thrown snow on the body to put the fire out; holes were burned through the clothing; there were burns on the skin and the forearm was burned badly clear to the elbow; the arm was cracked right open, the skin was cracked clear open; from the hip down the right leg was burned and there were places where the skin on the leg was cracked open and the rest of it was black down half way between the knee and ankle. No firearms were found in the car.

Neither plaintiff or defendant claims the death could be considered suicide. Plaintiff claims that the jury could have found that the death of Senator Hooper was the result of the act of one with a deranged mind, or the result of an accident other than murder. For the purposes of this civil action, we conclude that the testimony does not indicate that the shooting of Senator Hooper was the act of an insane person.

Defendant in its brief asserts that it very clearly appears that Senator Hooper was murdered, and that no other conclusion could be drawn from the testimony. The finding by the trial judge was that the undisputed testimony showed that insured came to his death as the result of homicide. We conclude that at least for the purposes of this civil action, the ruling by the trial court that the death was a case of homicide, was a correct ruling.

We next consider whether the murder of Senator Hooper was, from the standpoint of the insured, an accident.

"An intentional homicide is an accident, within the meaning of an accident policy, if insured himself was in no way responsible for his death." *Furbush*

v. *Maryland Casualty Co.* (syllabus), 131 Mich. 234 (100 Am. St. Rep. 605).

"It is a well-established rule that where insured is intentionally injured by another, and the injury is not the result of misconduct or an assault by the insured, but is unforeseen insofar as he is concerned, the injury is accidental within the meaning of accident policies," 20 A. L. R. 1123, citing cases in United States supreme court and from 17 States, including the Michigan case of *Furbush.* v. *Maryland Casualty Co., supra.*

See, also, 57 A. L. R. 972, where cases from five additional States are cited to like effect.

We find that although on the part of the person or persons shooting Senator Hooper, insured's death was of malicious design, yet so far as insured was concerned, his encounter with the murderer or murderers was an accident. In view of the foregoing authorities, we conclude that the death of Senator Hooper, in so far as concerns himself and his insurer, was the result of an accident.

The remaining question to be considered is whether or not liability in case of homicide, under the construction to be given to the double indemnity provisions of the policy, is excluded by the terms of the policy. The trial judge ruled that liability for death by homicide was excluded under the contract, and directed a verdict for the defendant.

The double indemnity provision contains the following words, the construction of which are disputed, "This provision shall not cover homicide or death resulting directly or indirectly from," followed by 12 specified exceptions.

It is plaintiff's theory that the words, "homicide or death," are modified by and subject to the modifying phrase, "resulting directly or indirectly

from." It is the theory of the defendant that the 12 exceptions pertain to and modify only the word "death," and that the sentence in question should be read as though there were a comma or semicolon after the word "homicide." Defendant claims that it is only the word "death" that is spoken of as subject to the various exceptions, 12 in number, and that the word "homicide" stands separately as an entire bar to liability under the double indemnity provision in the policy in question; in other words, that proof of homicide of whatever nature and from whatever cause is a bar to recovery.

We note that the phrase, "resulting directly or indirectly from," could be considered to modify the word "death" when applied to any one of the 12 exceptions, and that it could reasonably be applied to the word "homicide," and thus be considered to modify the word "homicide," in at least eight of the exceptions, *i.e.*, a homicide might be provoked or engendered directly or indirectly by "the commission of assault or felony by the insured;" by the insured engaging in "combat, war or any act of war;" or by the insured engaging in "participation in an insurrection, riot, or strike;" and further, that a "physical or mental disease, illness, or infirmity" might be an occasion from which homicide could indirectly result; further, it could be considered that "bacterial infection other than that occurring in connection with, or in consequence of, accidental bodily injuries," or "sickness resulting from the eating of any form of food or drinking of any form of liquid" could be used or created in the commission of homicide, and the same may be said concerning "poisoning, whether voluntary or otherwise, or asphyxiation" and "from carbon monoxide or gas, or fumes, of any kind, voluntary or involun-

tary, accidental or otherwise, taken, administered, absorbed, or inhaled."

The policy in this case was prepared, printed and brought to the insured by the defendant for the insured's acceptance. Under such circumstances, the ambiguity must be resolved against the insurance company. *Accident Insurance Co.* v. *Crandal,* 120 U. S. 527 (7 Sup. Ct. 685, 30 L. Ed. 740).

"There is no question but that, in a case of ambiguity, the language must be strongly construed against the insurer. The courts have no patience with attempts by a paid insurer to escape liability by taking advantage of an ambiguity, a hidden meaning, or a forced construction of the language in a policy, when all question might have been avoided by a more generous or plainer use of words. We have gone far in denying any such defense on the part of an insurance company. See *Birgbauer* v. *Aetna Casualty & Surety Co.,* 251 Mich. 614." *Boesky Bros. Corp.* v. *United States Fidelity & Guaranty Co.,* 267 Mich. 628, 629, 630.

"It is a principle of law too well established in this jurisdiction and others to need discussion or citation of authorities, that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured; that technical constructions of policies of insurance are not favored; and that exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer. *Pawlicki* v. *Hollenbeck,* 250 Mich. 38." *Pietrantonio* v. *Travelers Ins. Co. of Hartford, Conn.,* 282 Mich. 111, 116.

We construe the provision in question in the light most favorable to the insured, and we find, in accordance with plaintiff's theory, that the phrase

"resulting directly or indirectly from" modifies either the word "homicide" or the word "death," or both words, in every exception accordingly as the nature of the exception will admit. Under the policy in question, death due to homicide would be no ground for recovery if the homicide resulted directly or indirectly from a condition listed in one of the 12 exceptions. There is nothing in the record to indicate that conditions such as are set forth in any of the 12 exceptions entered into the causation of Senator Hooper's murder; all indications are to the contrary.

"When the action is brought upon an accident policy or upon the double indemnity provision of a life policy, it is incumbent upon plaintiff to show that death occurred through accidental means. The burden of proving accidental death and the consequent negativing of suicide is on plaintiff." *Dimmer* v. *Mutual Life Ins. Co.*, 287 Mich. 168, 172.

In the instant case plaintiff met that burden by producing testimony clearly indicating that Hooper was murdered. If the defense had been urged that the death instead of being murder was suicide and therefore defendant not liable, the burden of showing that it was not suicide would have been on the plaintiff. The burden of showing that the death was within any other of the exceptions embodied in the policy would be upon the defendant.

"This brings us to a consideration of the question whether, when the insured has shown the injury to be the result of an accident, the burden is then upon the defendant to show, by way of defense, that the accident was within the exceptions named in the certificate of insurance. We think this question must be answered in the affirmative." *Hess* v. *Preferred Masonic Mutual Accident Association of America*, 112 Mich. 196, 203, 204 (40 L. R. A. 444).

The fact that the death of insured was homicide does not bar liability under the double indemnity provisions of this policy, in view of all the testimony.

The judgment appealed from is reversed and new trial granted; costs to await the result.

CARR, C. J., and SHARPE, BOYLES, and NORTH, JJ., concurred with REID, J.

DETHMERS, J. *(dissenting).* I do not concur in the opinion of Mr. Justice REID.

The plaintiff contends that the trial court erred in the following respects:

1. Declining to submit to the jury the question of sanity of assured's assailant, on the theory that an insane person cannot commit intentional homicide and, therefore, the death may not have been a homicide, excluded by the contract, but, in legal contemplation, an accident.

2. Holding that the burden is upon plaintiff to negative homicide as the cause of assured's death and thus to prove that the exception in the contract as to homicide did not occur.

3. Holding that homicide, regardless of how perpetrated, is excluded by the provisions of the double indemnity contract of the policy.

1. There is not the slightest evidence of insanity of assured's assailant in the record, nor any from which an inference thereof might reasonably be drawn. Every person is presumed-sane and the burden is upon the party asserting the contrary to establish insanity. *Blackstone* v. *Standard Life & Accident Ins. Co.,* 74 Mich. 592 (3 L. R. A. 486); *Brunswick* v. *Standard Accident Ins. Co.,* 278 Mo. 154 (213 S. W. 45, 7 A. L. R. 1213); *Scales* v. *National Life & Accident Assurance Co.* (Mo.), 212 S. W. 8. The trial court properly held that there

was no question in this respect for submission to the jury.

2. To recover at all under the policy's double indemnity provisions covering accidental death, the plaintiff must sustain the burden of proving that assured came to his death by accidental means. See *Dimmer* v. *Mutual Life Ins. Co.*, 287 Mich. 168, and cases therein cited. Assured's death was caused by three bullets shot into his head, any one of which would have caused instant death. No gun was found in his car. The car doors and windows apparently were closed when the car was first discovered and but one hole was found in the car, evidently caused by a bullet which had passed through assured's head. Footsteps were found in the snow leading away from the car, but none leading to it. These facts preclude the possibility that assured accidentally killed himself or was accidentally killed by a sane person who was either inside or outside the car. Viewed in the light most favorable to plaintiff, the evidence could in no wise sustain a finding or give rise to an inference of accidental death, except as we have recourse to the theory, employed by Mr. Justice REID, that the death was, as the facts so clearly indicate, a case of intentional homicide, which, if not provoked by the victim, is, insofar as he is concerned, to be deemed an accident. *Furbush* v. *Maryland Casualty Co.*, 131 Mich. 234 (100 Am. St. Rep. 605). Regardless of where the burden of proof otherwise might have rested as to the occurrence or nonoccurrence of the exception—namely, homicide—the plaintiff thus was required to prove intentional homicide in order to establish the prerequisite to her right to recovery—namely, accidental death. Either she has not proved the latter and cannot recover, or she has proved intentional homicide, in which case we are left with the

question of whether such homicide is or is not excluded by the terms of the policy.

3.    The opinion of Mr. Justice REID holds that, as contended by plaintiff, the double indemnity provisions of the policy exclude homicide only when it results from certain specified causes, on the theory that not only the word "death" but also the word "homicide," as used in the policy, is modified by the words "resulting directly or indirectly from" and by so many of the 12 subsequently enumerated exceptions as their natures will admit. With such view I am not in accord. Justice REID's opinion states that all 12 exceptions can and do modify the word "death," but concedes that by their very nature certain of them could not possibly modify the word "homicide;" and, of necessity, for it is difficult to imagine how assured's death by homicide could result from certain of the enumerated exceptions, such as his own physical disease, illness, infirmity or hemophilia. But there is no authority for the court to insert language into the contract to the effect that so many of the 12 exceptions modifying the word "death" as have natures which will admit of it shall also be deemed to modify the word "homicide;" and to do so would make the word "homicide" utterly superfluous and meaningless, inasmuch as every situation contemplated by the 12 exceptions is covered by applying the language thereof to the word "death" alone. To give the word "homicide" any meaning in the contract at all, it must be deemed to have added an exclusion beyond that of death resulting from any of the 12 enumerated exceptions. It is neither the province of the court to strike a word from a contract or render it meaningless, nor to incorporate new language into the contract, nor even to attempt a strained construction against the interests of the insurance com-

pany merely because the company prepared the policy, when the meaning of the language in the contract as written is clear, certain, unambiguous and capable of being given full effect.

It is my opinion that the trial court was correct in holding that, under the language of the double indemnity provisions of the policy, the defendant is not required to pay double indemnity in cases where the death of the assured results from homicide.

The judgment should be affirmed, with costs to defendant.

Butzel, and Bushnell, JJ., concurred with Dethmers, J.