PUTMAN *v.* ZELUFF.

INSURANCE—EXCLUSIONS—INTENTIONAL DESTRUCTION OF PROPERTY—
HUNTING DOGS.

Judgment for competently established value of plaintiff's hunting
dog is affirmed against garnishee defendant, insurer under
comprehensive personal liability insurance policy, where evidence
showed insured's son who pointed his rifle at the dog and fired
the weapon had no intention of destroying a valuable dog but
merely sought to protect himself and his companions on a camp
out on his parents' property from what he had supposed were
wild dogs, there being no intentional destruction of property
excluded from coverage.

Appeal from Kalamazoo; Sweet (Lucien F.), J.
Submitted December 6, 1963. (Calendar No. 130,
Docket No. 50,176.) Decided April 6, 1964.

Case by Belton E. Putman against Roger Zeluff,
for killing a hunting dog, resulted in judgment for
plaintiff. On garnishment proceedings against Farm
Bureau Mutual Insurance Company of Michigan,
a Michigan corporation, judgment was entered for
plaintiff over policy defense of a claimed intentional
act. Garnishee defendant appeals. Affirmed.

*Doyle, James & Dark,* for plaintiff.

*Troff, Lilly & Bonow,* for garnishee defendant.

REFERENCES FOR POINTS IN HEADNOTE
29A Am Jur, Insurance § 1340.

O'HARA, J. Appeal here is from a judgment in garnishment against appellant and garnishee-defendant Farm Bureau Mutual Insurance Company of Michigan for $1,000. This judgment is derivative of an earlier trespass action and judgment against Roger Zeluff, the principal defendant, whose parents were insured by defendant company under a comprehensive personal liability policy which had other insuring provisions not relevant here. It should be well noted that we address ourselves only to the question raised on this appeal and our holding is precedent on no other issue.

The parties state that question differently. We set them both out herewith:

Appellants:

"Whether the act of appellant's insured in pointing or aiming his rifle at the appellee's dog, and thereafter shooting it in fear of his personal safety, avoids the coverage under a liability policy excluding liability for injury or destruction caused intentionally by the insured?"

Appellee:

"Whether the act of appellant's insured in pointing his rifle at the appellee's dog, and then shooting at it in fear of his safety, and in order to stop the dog, under the mistaken belief that it was a wild dog, avoids coverage under a liability policy excluding liability for injury or destruction caused intentionally by the insured?"

The pertinent coverage clause and the exclusion involved read as follows:

"Coverage B—Property damage liability
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof."

Exclusion:

"(c) Under coverages A, B, and C, to injury, sickness, disease, death or destruction caused intentionally by or at the direction of the insured."

We adopt the findings of fact of the trial judge, with certain omissions we do not deem essential:

"The boy, Roger Zeluff, with a boy companion, was camping out overnight, in a clearing on top of a hill surrounded by woods on his father's property. Roger had with him a .22 rifle.  *  *  *

"The boys had a fire; they roasted some hot dogs and marshmallows, and then climbed into their sleeping bags. They had no tent. They heard dogs barking at quite some distance. The dogs continued to bark and the sounds came closer to the boys. Finally Roger got out of his sleeping bag, got his rifle, and went some short distance from the fire—built up the fire and went some short distance from the fire looking for the dogs. Three dogs came into sight. They were still barking. Roger fired the rifle once in the air for the purpose of scaring the dogs away, and this apparently affected 2 of the dogs 1 of which stopped, and I believe the other one, perhaps retreated. But the dog belonging to the plaintiff continued to come on. Whereupon Roger shot from the hip, so to speak, without placing the rifle to his shoulder, with the gun pointed or aimed toward the dog.  *  *  *

"At all times prior to the appearance of the owner of the dog and his companions, who  *  *  *  were practice-hunting, training the dogs—but until Roger was confronted with the owner of the dog and his companions Roger had no idea that this was a valuable dog or that this was anything but a wild one.

"He had heard of wild dogs roaming the woods. He was under the belief that the 3 dogs that approached him were wild dogs, and there can be no question from the reading of his deposition and the deposition of the plaintiff that he was a very excited and disturbed and frightened lad.  *  *  *

"At that time he believed that he and his companion were being attacked, or might be attacked, by wild dogs. He intended to protect himself from such an attack; he intended to stop this particular dog; he had stopped the other 2 dogs by firing in the air. This firing in the air had failed to stop the plaintiff's dog, so, Roger, using the means at hand, fired towards the plaintiff's dog.

"He did not, apparently, have time to take careful aim or place the gun on his shoulder or sight down the barrel of the gun but he fired at the dog with the gun pointed towards the dog, intending to stop the dog."

The question then is, under the foregoing facts, was the company's liability avoided by reason of the exclusion of damage or destruction to property caused intentionally by the insured, *i.e.*, Roger—to whom coverage extended.

The issue should not be confused nor mispremised. The question is Roger's total intent. Obviously he intended to fire the weapon. Obviously he intended to stop the on-rush of the animal by shooting in its direction. But it remained a question of fact as to whether in so doing he intended to destroy it. The trier of the facts found he did not so intend and such finding was supported by the record. By no reading of the record could it possibly be found as a matter of law that Roger intended to destroy plaintiff's pedigreed Blue Tick coon-hound. The destruction of that particular item of plaintiff's property is what gave rise to the liability for $1,000 which was competently established as the monetary value of the property destroyed.

If precedent be needed to support our conclusion, it is to be found in appellee's cited case, *Morrill* v. *Gallagher,* 370 Mich 578, 588:

"Some emphasis is placed on exclusion (c) on the ground that in the instant case the firecracker was

thrown intentionally. Unquestionably such was the case, but it will be noted that under the language of the excluding clause the *injury* must be caused 'intentionally.' There is nothing in this case to justify a conclusion that either Gallagher or Canfield intended to cause any physical harm to plaintiff. The language of the policy is binding on appellant, and if ambiguous it must be construed against appellant's claims in the instant controversy. It may not be interpreted as barring liability under the policy."

This was no case of an ill-intentioned boy knowingly destroying property as we generally understand that phrase, as for instance shooting the insulators off electric wires, or shooting out windows with a BB gun, or similar intentional mischief. Against the damage resulting from this class of acts, Roger, through his parents' policy, was not insured. Against what he did do, he was insured. We agree with the trial court:

"The liability of the insurance carrier is not excused by reason of the exclusion provision with which we are here concerned, and that that exclusion provision does not cover the situation that here existed."

The judgment is affirmed. Plaintiff may tax costs.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, and SOURIS, JJ., concurred with O'HARA, J.

SMITH, J., concurred in result.

ADAMS, J., took no part in the decision of this case.