STATE FARM FIRE & CASUALTY COMPANY v JENKINS

Docket No. 80877. Submitted July 3, 1985, at Lansing.—Decided December 2, 1985.

Matt Jenkins died when his car exploded after Frederic Grasfeder placed explosives in Jenkins's car at the request of Jenkins's wife, Geraldine. Grasfeder pled guilty to second-degree murder as a result. Peggy Jenkins, as personal representative of the estate of Matt Jenkins, filed a wrongful death action against Geraldine Jenkins and Frederic Grasfeder. She alleged that Grasfeder negligently placed an excessive amount of explosives in Matt Jenkins's automobile. State Farm Fire & Casualty Company insured Grasfeder under a homeowner's policy which excluded coverage for "bodily injury * * * which is intended or expected by the insured". State Farm brought an action in the Oakland Circuit Court against Peggy Jenkins and Grasfeder for a declaratory judgment that it was not liable to defend or pay any judgment against Grasfeder in the wrongful death action. The court, Francis X. O'Brien, J., granted summary judgment for plaintiff. Peggy Jenkins appealed. *Held:*

In order for an insurance company to avoid liability for "expected" injuries inflicted by its insured where the policy excludes coverage for "intended *or* expected" injuries, it must be shown that the injury was the natural, foreseeable, expected and anticipatory result of an intentional act. The trial court correctly found that Grasfeder expected the injury which resulted when he placed the explosives in Jenkins's car. Death or serious injury was the natural, foreseeable, expected, and anticipated result of Grasfeder's intentional act of placing the explosives. Grasfeder's plea of guilty to second-degree murder establishes that he did a wanton and wilful act, the natural tendency which is to cause death or great bodily harm. One who commits an act that has a natural tendency to cause death or great bodily harm can reasonably expect those results to ensue from commission of the act.

Affirmed.

REFERENCES

Am Jur 2d, Insurance §§ 1016, 1938, 2042.

Specific exclusion of liability for injury intentionally caused by insured. 2 ALR3d 1238.

INSURANCE — INTENTIONAL INJURIES — EXPECTED INJURIES.
 In order for an insurance company to avoid liability for "expected" injuries inflicted by its insured where the policy excludes coverage for "intended *or* expected" injuries, it must be shown that the injury was the natural, foreseeable, expected and anticipatory result of an intentional act.

*Romain, Donofrio & Kuck, P.C.* (by *Pat M. Donofrio*), for plaintiff.

*Kutinsky, Davey & Solomon* (by *Sheila Solomon*), for defendant.

Before: SHEPHERD, P.J., and R. B. BURNS and R. L. TAHVONEN,* JJ.

R. L. TAHVONEN, J. Defendant Peggy Jenkins is the daughter of Matt Jenkins. Matt Jenkins died in October, 1980, when his car exploded after Frederic Grasfeder placed explosives in Jenkins's car at the request of Jenkins's wife, Geraldine. In this declaratory action, plaintiff, State Farm Fire & Casualty Company, asserted it was not liable to Matt Jenkins's estate under a homeowners' policy issued to Frederic Grasfeder. The trial court agreed, and granted summary judgment in plaintiff's favor, GCR 1963, 117.2(3) (now MCL 2.116[C][10]). Defendant Peggy Jenkins appeals as of right. We affirm.

In 1981, defendant Peggy Jenkins, as personal representative of the estate of Matt Jenkins, filed a wrongful death action in circuit court against Geraldine Jenkins and Frederic Grasfeder. She alleged that Grasfeder negligently placed an excessive amount of explosives in Matt Jenkins's automobile. When Mr. Jenkins operated the car, it exploded and killed him.

Plaintiff, State Farm, responded to the wrongful

* Circuit judge, sitting on the Court of Appeals by assignment.

death action by filing the present action for declaratory judgment contesting its liability to pay any judgment against its insured, Frederic Grasfeder. State Farm claimed that it was not liable because its policy excluded coverage for a "bodily injury or property damage which is intended or expected by the insured". Grasfeder did not respond to plaintiff's complaint and is not a party to this appeal. In granting plaintiff's motion for summary judgment, the trial court ruled that Grasfeder should have expected serious injury or death to occur when he placed the explosive device in Jenkins's automobile.

After defendant's claim of appeal was filed, both parties requested this Court to remand the case to the trial court to supplement the record. That request was granted. Thereafter, the trial court ordered the record supplemented with Mr. Grasfeder's deposition and the transcript of his guilty plea to second-degree murder.

At the time he pled guilty to second-degree murder in Wayne County Circuit Court, Grasfeder told the judge:

"I am, or was, madly in love with a certain young lady, and as a result of that, I did as she requested.

"I placed an explosive device in her husband's car, and as a result, he died."

At his deposition, Grasfeder explained that he first met Geraldine Jenkins (then Geraldine Armstrong) in February, 1978. Although he lived in Tennessee and Geraldine lived in Michigan, an intimate relationship followed and continued on a sporadic basis until July, 1978. Thereafter, he maintained telephone contact with Geraldine until November, 1978. In December, 1979, Grasfeder learned that Geraldine had married Matt Jenkins.

Grasfeder telephoned her and met her in Nashville, Tennessee, in February, 1980. Following their meeting, they renewed their friendship and kept in contact by letters and telephone calls. Grasfeder was aware during this time that Geraldine was experiencing problems with her marriage. While he was visiting in Michigan in September, 1980, Geraldine asked for his assistance in "straightening her old man out". According to Grasfeder, Geraldine asked him to place an explosive device in her husband's automobile in order to scare him. Grasfeder agreed to help her and returned to Tennessee to secure items needed for an explosive device. One of the items he obtained was ammonium nitrate. Grasfeder said that he had used the substance to remove obstructions while in the National Guard. Grasfeder planned to attach a device containing the ammonium nitrate to Mr. Jenkins's transmission, disabling the automobile. Before returning to Michigan, he tested the explosive device to determine the amount of ammonium nitrate needed to cause a minor explosion. Geraldine met him when he arrived in Michigan and drove him to her husband's automobile. Grasfeder attached the explosive device somewhere in the vicinity of the automobile's transmission.

Grasfeder admitted that he was aware of the fact that the Michigan State Police determined that the explosion which killed Mr. Jenkins had the force of at least three sticks of dynamite and that the explosion occurred under the driver's seat. He theorized that the dynamite had been attached to the automobile after he left and that the ammonium nitrate explosion caused the dynamite to detonate. Grasfeder denied that he ever had any intention or expectation that Mr. Jenkins would be killed by his explosive device. He also denied that any romantic link remained between

him and Geraldine. He explained that they were merely good friends and that he wanted to help her because she had been physically abused by Mr. Jenkins. Grasfeder also explained that he pled guilty to second-degree murder rather than face a trial on a first-degree murder charge.

The sole issue before us is whether the trial judge erred in granting summary judgment in plaintiff's favor under GCR 1963, 117.2(3) (now MCR 2.116[C][10]). A motion for summary judgment grounded on a claim that there is no genuine issue as to any material fact is designed to test whether there is factual support for a claim or defense. Before the court can grant summary judgment, it must be satisfied that it is impossible for the claim or defense to be supported at trial because of some deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 370-374; 207 NW2d 316 (1973).

In *Morrill v Gallagher,* 370 Mich 578, 588; 122 NW2d 687 (1963), the Supreme Court held that, where an insurance policy excludes intentional injury, both an intentional act and an intentional injury must be demonstrated. Here, the homeowners' policy in question excludes personal liability coverage for a "[b]odily *injury* or property damage which is *expected or intended* by the insured * * *". (Emphasis added.) Thus, unlike *Morrill v Gallagher, supra,* the exclusion here is broader and encompasses both intended or expected injury.

In construing an intentional injury exclusion, courts in some jurisdictions hold that there is no difference between the terms "intended" and "expected", while other courts recognize that the terms are not synonymous. See generally, Anno: *Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured,* 31 ALR4th 957,

§ 4, pp 981-983. In *Linebaugh v Berdish,* 144 Mich App 750; 376 NW2d 400 (1985), this Court recognized that there may be a difference between policies which exclude only intentional injuries and policies which exclude both intentional and expected injuries. *Linebaugh,* however, is not dispositive because the policy itself only excluded intentional injuries.

Of the Michigan cases cited by the parties, only *Group Ins Co of Michigan v Morelli,* 111 Mich App 510; 314 NW2d 672 (1981), construes a policy which excluded both intentional and expected injuries.[1] In *Morelli,* the question was whether or not the insurance company had to defend and indemnify its insured in an assault and battery action by Nesbitt. The Court held:

> "The injury sustained by Nesbitt was the natural, foreseeable, *expected* and anticipatory result of the intentional act of Morelli. As such, we find that both the act and injury were *intentional* and, thus, within the exclusion provision of the policy coverage. Hence, plaintiff had no duty to defend or indemnify defendant." 111 Mich App 516 (emphasis added).

Thus, if the Court recognized a distinction between intentional injuries and expected injuries in *Morelli,* the Court found the distinction unimportant under the facts since the injuries were clearly intentional.

We believe, where a policy excludes coverage for

---

[1] See *Putman v Zeluff,* 372 Mich 553, 556; 127 NW2d 374 (1964); *Morrill v Gallagher, supra,* p 588; *Farm Bureau Mutual Ins Co v Rademacher,* 135 Mich App 200, 201-202; 351 NW2d 914 (1984); *Iacobelli Construction Co, Inc v The Western Casualty & Surety Co,* 130 Mich App 255, 264; 343 NW2d 517 (1983); *Kermans v Pendleton,* 62 Mich App 576, 579; 233 NW2d 658 (1975); *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686, 689; 218 NW2d 52 (1974), lv den 392 Mich 803 (1974); *Hawkeye Security Ins Co v Shields,* 31 Mich App 649, 654; 187 NW2d 894 (1971), which all construed policies which excluded intentional injuries.

intended *or* expected injuries, a distinction should be drawn between the terms "intentional" and "expected". In order to avoid liability for an expected injury, it must be shown that the injury was the natural, foreseeable, expected, and anticipatory result of an intentional act. *Morelli, supra,* p 516.

In the present case, we find that the trial court correctly found that Grasfeder expected the injury which resulted when he placed the explosives in Jenkins's car. Death or serious injury was the natural, foreseeable, expected, and anticipated result of Grasfeder's intentional act of placing the explosives.

Grasfeder's guilty plea to second-degree murder is dispositive.[2] To convict of second-degree murder, the prosecution must prove beyond a reasonable doubt that the defendant intended to kill or intended to do great bodily harm or committed a wanton and wilful act the natural tendency of which is to cause death or great bodily harm. CJI 16:2:04. We are persuaded that, at the very least, Grasfeder's plea of guilty to second-degree murder establishes that he did a wanton and wilful act, the natural tendency of which is to cause death or great bodily harm. We are further persuaded that one who commits an act that has a natural tendency to cause death or great bodily harm can reasonably expect those results to ensue from commission of the act. We are therefore persuaded that the guilty plea conclusively established that Grasfeder, at a minimum, expected death or seri-

---

[2] In her supplemental brief, Jenkins argues that Grasfeder's guilty plea should not collaterally estop her from litigating the issue of whether Grasfeder intended or expected the injury. We agree with Jenkins that because she was not a party in the criminal action, the doctrine of collateral estoppel does not bar litigation of the issue. We believe, however, that the trial judge properly found no issue of material fact.

ous bodily harm. That being the case, the express language of the policy excludes coverage and the trial court correctly granted summary judgment.

Affirmed.