ALLSTATE INSURANCE COMPANY v FREEMAN

Docket No. 83797. Submitted November 6, 1986, at Detroit. Decided May 19, 1987. Leave to appeal applied for.

Mary Helen Kelly filed suit against Marshall and Alonda Freeman seeking damages for injuries suffered by Kelly when she was shot by Alonda Freeman on the Freemans' premises. The Freemans sought to have Allstate Insurance Company, the company which issued their homeowners' insurance, defend the action and provide coverage for any judgment which might be rendered against them. Allstate filed a declaratory judgment action against the Freemans and Kelly in Wayne Circuit Court seeking a determination as to whether it must defend the tort action or provide coverage. The court, Maureen Pulte Reilly, J., granted summary disposition in favor of plaintiff, finding that coverage was excluded by policy language which excluded coverage for "any bodily injury . . . which may reasonably be expected to result from the intentional or criminal acts of an insured person or injury which is . . . intended by an insured person." Alonda Freeman was convicted in a criminal case of discharge of a firearm intentionally but without malice. Defendants appealed the trial court's ruling declaring that Allstate had no duty to defend the Freemans.

The Court of Appeals *held*:

1. The trial court was correct in finding that plaintiff has no duty to defend Alonda Freeman in the underlying tort suit. An intent or expectation to injure can be inferred as a matter of law from Alonda Freeman's act of firing the gun in Kelly's direction at close range.

2. Any duty plaintiff would have to defend the underlying action against Marshall Freeman is solely derivative of the duty to defend that action against Alonda Freeman. Since plaintiff has no duty to defend Alonda Freeman, there can be no duty to defend Marshall Freeman. Furthermore, any negli-

REFERENCES

Am Jur 2d, Insurance §§ 708-710, 1408.
Construction and application of provision of liability insurance policy expressly excluding injuries intended or expected by insured. 31 ALR4th 957.

gence on the part of Marshall Freeman in leaving a loaded gun in his house is irrelevant, since the underlying claim against Alonda Freeman is not covered by the homeowner's policy.

Affirmed.

J. X. THEILER, J., dissented from that part of the majority's opinion that held that plaintiff has no obligation to provide a defense to Marshall Freeman. He would hold that the exclusion clause is ambiguous and that, by using proper rules of construction, the exclusion should not be applicable to Marshall Freeman. Furthermore, even if there is no ambiguity in the exclusion clause, Judge Theiler would hold that the rule of reasonable expectations would prevent the exclusion of the duty to defend Marshall Freeman. He would reverse the trial court's ruling that plaintiff has no duty to defendant Marshall Freeman and would defer a determination as to whether plaintiff is also required to cover any claim against Marshall Freeman until after trial.

1. INSURANCE — EXCLUSIONARY CLAUSES — INTENT TO INJURE — INFERENCES.

An act of an insured may be so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law for purposes of determining the applicability of exclusionary clauses which exclude coverage for bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person.

2. INSURANCE — EXCLUSIONARY CLAUSES — NEGLIGENT ENTRUSTMENT.

An insurance policy exclusion which precludes coverage for a particular injury also excludes coverage for negligent entrustment of the instrumentality that caused the injury.

*Garan, Lucow, Miller, Seward, Cooper & Becker* (by *James C. Rabaut* and *Rosalind Rochkind*), for plaintiff.

*Craig A. Daly,* for Marshall and Alonda Freeman.

*Joseph DeVal Welton,* for Mary Helen Kelly.

Before: HOOD, P.J., and T. M. BURNS and J. X. THEILER,* JJ.

HOOD, P.J. Defendants appeal as of right from two orders granting summary disposition pursuant to MCR 2.116(C)(10) on plaintiff's declaratory action concerning its duty to defend its insureds, Marshall and Alonda Freeman, under their homeowner's policy. In the still pending underlying tort action, Mary Helen Kelly sued the Freemans for injuries sustained in a shooting by Alonda Freeman on the Freemans' premises. When defense of the tort suit was tendered to plaintiff, it sought a determination of liability coverage available to the Freemans under the policy. Plaintiff alleged that the following exclusionary provision in the policy was a bar to coverage:

> We do not cover any bodily injury or property damage which may reasonably be expected to result from the *intentional or criminal acts of an insured person or which is in fact intended by an insured person.* [Emphasis added.]

While there are minor discrepancies between the Freemans' account of the shooting and Kelly's version, and while Alonda Freeman stated on deposition that she did not intend her shot to "hit any certain place," she did agree with Kelly that she was firing in Kelly's direction. Alonda Freeman was ultimately convicted in a criminal case of discharge of a firearm intentionally but without malice, MCL 750.235; MSA 28.432. Marshall Freeman was not home at the time of the shooting, but in Kelly's amended complaint, she alleged that he was negligent in leaving a dangerous instrumen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tality in the house so that Alonda Freeman had access to it.

The trial court initially granted plaintiff's motion as to Alonda Freeman only, holding that coverage was excluded by the policy language cited by the plaintiff. Subsequently, the trial court ruled that plaintiff also had no duty to defend Marshall Freeman because the claim itself, damages for Kelly's injury, was what triggered the exclusionary clause. Because the injury could reasonably be expected to result from Alonda Freeman's intentional act, regardless of intent to injure, the trial court reasoned that the injury was not covered even if Marshall Freeman was negligent in leaving the weapon in the Freeman home. The defendants' appeal challenges both grants of summary disposition.

As to the question of plaintiff's duty to defend Alonda Freeman, the Freemans argue that the trial court erred because Ms. Freeman negligently fired the gun in the direction of Kelly under the belief that she was acting in self-defense and without intent or expectation that she would cause personal injury. Defendant Kelly urges that the trial court erred in finding no duty to defend Alonda Freeman because the judge mistakenly applied an objective test instead of a subjective test to whether Ms. Freeman expected or intended the injury to defendant Kelly. Our review persuades us that both arguments are flawed under the facts presented in this summary disposition motion.

In reviewing a grant or denial of summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, admissions and other documentary evidence available to it and gives the benefit of any reasonable doubt and views the evidence in a light most

favorable to the party opposing the motion. *Wright v White Birch Park, Inc,* 118 Mich App 639, 646; 325 NW2d 524 (1982). Considering the evidence under these standards, we must nonetheless reject the Freemans' self-defense argument. Assuming arguendo, for the purposes of this motion, that Alonda Freeman did not intend to injure Kelly, but merely intended to frighten her away, there is still no dispute that she pointed a loaded gun in the direction of Kelly and fired it at her at close range.

Defendants cite a number of cases for the principle which they claim controls the instant case, that an insurance policy clause which excludes intentional injury does not exclude intentional acts with resulting unintentional injury. *Putman v Zeluff,* 372 Mich 553; 127 NW2d 374 (1964) (boy, camping with friends, shot and killed valuable hunting dog that he mistakenly believed was wild dog that was menacing him); *Morrill v Gallagher,* 370 Mich 578; 122 NW2d 687 (1963) (insured threw cherry bomb into room where the plaintiff was working to frighten him, causing serious hearing impairment and nervous disorder); *Vermont Mutual Ins Co v Dalzell,* 52 Mich App 686; 218 NW2d 52 (1974), lv den 392 Mich 803 (1974) (seventeen-year-old son of insured threw pumpkin off overpass in order to frighten motorist who was instead struck, suffering serious facial and eye injuries); *Hawkeye Security Ins Co v Shields,* 31 Mich App 649; 187 NW2d 894 (1971) (third person's intent to injure when he kicked injured in groin not to be imputed to insured who was also involved in a street fight with the injured where insured did not direct that the injury be done); *Connecticut Indemnity Co v Nestor,* 4 Mich App 578; 145 NW2d 399 (1966) (because of his tender years, 8½ year old who set fire to neighbor's house did not intend

damage which followed). However, each of these cases involved language in the insurance policy that excluded coverage "to injury caused intentionally by or at the direction of the insured." In the instant case, the trial judge specifically ruled that her holding was based not on the "intentional" language, but on the "reasonably expected" clause in the exclusion.

Plaintiff correctly points to several of this Court's more recent cases which recognize the distinction between injuries which are covered by a policy distinguishing "intentional" and "expected" acts. For example, in *Group Ins Co of Michigan v Morelli,* 111 Mich App 510; 314 NW2d 672 (1981), the insured was found liable for the intentional tort of assault and battery when he kicked a man in the face, breaking the man's nose. The policy of insurance excluded bodily injury "expected or intended from the standpoint of the insured." Citing *Kermans v Pendleton,* 62 Mich App 576, 580; 233 NW2d 658 (1975), this Court contrasted the cases drawing a distinction between intended tortious acts and unintended tortious results, held the distinction was without a difference, and found the injury to be the "natural, foreseeable, expected and anticipatory result of the intentional act of Morelli." Interpreting a similar exclusion in *Wright v White Birch Park, Inc, supra,* this Court adopted the opinion of the trial court, wherein it was stated that "a reasonable person could 'expect' injury to a person that repeatedly receives blows from fists thrown to a point where that person states he 'had enough.' "

More recently, in *State Farm Fire & Casualty Co v Jenkins,* 147 Mich App 462; 382 NW2d 796 (1985), the insured, who had pled guilty to second-degree murder in the placement of an explosive on

the transmission of the plaintiff's decedent's car, contended that the insurer had a duty to defend him because he only intended to frighten the decedent. This Court affirmed the trial court's grant of summary disposition in favor of the insurer. The Court held that "where a policy excludes coverage for intended *or* expected injuries, a distinction should be drawn between the terms 'intentional' and 'expected'." *Id.* at 467-468. Citing the above-quoted language from *Morelli, supra,* this Court concluded that death or serious injury was the natural, foreseeable, expected, and anticipated result of the insured's intentional act of placing the explosives. The Court was further persuaded that the insured's guilty plea to second-degree murder conclusively established that he, at minimum, expected death or serious bodily harm to result.

Most squarely on point with respect to the instant case is *Yother v McCrimmon,* 147 Mich App 130; 383 NW2d 126 (1985). In *Yother,* we held that an injury resulting from the defendant's hitting the plaintiff with a tire iron was not covered under the insurance policy even though the defendant alleged self-defense and claimed not to have intended to injure the plaintiff. The facts showed that, following a short exchange of words, the plaintiff grabbed the defendant by the shirt and pushed him against a wall, whereupon the defendant threw the plaintiff to the ground and grabbed a tire iron and struck the plaintiff on the head as the plaintiff got to his feet. The defendant pled guilty to a charge of aggravated assault. Construing a policy exclusion for bodily injury which is "either expected or intended" from the standpoint of the insured, this Court affirmed the lower court's grant of summary judgment because the injury sustained by the plaintiff was "the natural,

foreseeable, and 'expected' result of defendant's intentional act of wielding a tire iron." *Id.* at 134.

In this case, as in *Yother,* Alonda Freeman was convicted of a criminal offense arising out of the incident. Under these circumstances we cannot possibly construe her actions to be in self-defense. Alonda Freeman acknowledged that she fired the handgun in the direction of Kelly, and under Freeman's version, Kelly was only three to six feet away when she fired. While it might conceivably be argued that she did not *intend* to injure, to say that there was no *expectation* of injury is patently disingenuous. Although in *Linebaugh v Berdish,* 144 Mich App 750, 760-761; 376 NW2d 400 (1985), this Court was quoting from a New Hampshire case that allowed coverage in the particular circumstances of that decision, in this case we agree with the principle that "some acts . . . 'are so nearly certain to produce injury that intent or expectation to injure should be inferred as a matter of law.' " *MacKinnon v Hanover Ins Co,* 124 NH 456, 460; 471 A2d 1166 (1984).

Based on this same principle, defendant Kelly's argument that an insured's expectation of coverage must be determined by the insured's subjective expectation of the policy rather than an objective standard is without merit. Moreover, defendants' reliance upon remarks in Justice LEVIN's dissent from the Supreme Court's denial of leave in *Iowa Kemper Ins Co v Kasper,* 419 Mich 924; 355 NW2d 109 (1984), reconsideration den 419 Mich 927 (1984), to support their argument is misplaced. Justice LEVIN's dissent in *Kasper* has no precedential value since the majority chose not to grant leave to review the case. In *Kasper,* this Court, in an unpublished per curiam opinion, affirmed a trial court's finding that the defendant expected or intended injury when he beat a man with his fist

and that the insurance company was absolved from coverage. Furthermore, the language in the insurance policy in *Kasper* was significantly different from the language in the instant case.

For these reasons, we find that the trial court was correct in finding no duty to defend Alonda Freeman in the underlying tort suit. The trial court's grant of summary disposition against Alonda Freeman is affirmed.

We also agree with the trial court's conclusion that, by the plain language of the exclusionary clause, Allstate has no duty to defend Marshall Freeman against the Kelly suit. While we agree with Kelly and the Freemans that, under the policy, Allstate has a separate and distinct duty to cover each of the insureds, we nonetheless agree with the trial court that in this case any duty to defend Marshall Freeman is solely derivative of the duty to defend Alonda Freeman under the policy. The claim in this case against Marshall Freeman may essentially be categorized as a negligent entrustment claim.

The tort of negligent entrustment is comprised of two basic elements. *Perin v Peuler (On Rehearing)*, 373 Mich 531, 537-539; 130 NW2d 4 (1964). First, the entrustor is negligent in entrusting the instrumentality to the entrustee. Second, the entrustee must negligently or recklessly misuse the instrumentality. The triggering element is such misuse of the item, for even if the entrustment was negligent no cause of action could arise without an injury caused by negligent use of the instrumentality. But, where an insurance policy exclusion precludes coverage for the particular injury, then it also excludes coverage for negligent entrustment of the instrumentality that caused the injury. In other words, we look to the underlying cause of the injury to determine coverage and

not to the specific theory of liability alleged in the complaint. *Illinois Employers Ins of Wausau v Dragovich,* 139 Mich App 502, 507; 362 NW2d 767 (1984); *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62,65; 250 NW2d 541 (1976).

The best case to illustrate this proposition is *Michigan Mutual Ins Co v Sunstrum,* 111 Mich App 98; 315 NW2d 154 (1981), lv den 414 Mich 890 (1982). In *Sunstrum,* which involved an automobile accident, one of the theories was that Sunstrum was entitled to recover on the insured's homeowner's insurance policy on the basis that the insured had negligently entrusted his truck to his son. This Court found the applicable language of the homeowner's policy motor vehicle exclusion clearly precluded coverage of the claim of negligent entrustment.[1]

Likewise, in the case at bar, the trial court recognized that it is the claim, Kelly's injury, which controls and not each tort defendant's conduct. The plain language of the exclusionary clause provides that the insurer does not cover Kelly's injury because that bodily injury may reasonably be expected to result from the intentional or criminal acts of Alonda Freeman or that bodily injury was in fact intended by Alonda Freeman. Because this underlying claim is not covered, Marshall Freeman's negligence is irrelevant.

For the foregoing reasons, the decision of the trial court that Allstate had no duty to defend

---

[1] The *Sunstrum* Court was careful to distinguish *Shelby Mutual Ins Co v United States Fire Ins Co,* 12 Mich App 145; 162 NW2d 676 (1968), which concluded that the plaintiff insurance company was required to provide coverage despite a homeowner's policy motor vehicle exclusion because that case involved the parental liability statute. This Court's unpublished decision in *Allstate Ins Co v York,* decided February 13, 1985 (Docket No. 77870), relied upon by the appellants, is distinguishable on similar grounds.

Alonda Freeman or Marshall Freeman in the underlying tort suit is affirmed.

T. M. BURNS, J., concurred.

J. X. THEILER, J. *(concurring in part and dissenting in part).* I concur in part and dissent in part to Judge HOOD's opinion. The insurance policy involved contains these relevant provisions entitled "Coverage X, Family Liability Protection" under part 1:

> Losses we cover. We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.
> We may investigate or settle any claim or suit for covered damages against an insured person. If an insured person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are not true. We are not obligated to pay any claim or judgment or defend any suit if we have already exhausted the limit of liability by paying judgments or settlements.
> Exclusions—Losses We Do Not Cover. 1 We do not cover any bodily injury or property damages which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

The policy clearly imposes two obligations upon the insurance company. One is to provide representation for an insured person who is being sued. The second obligation is to pay for losses which an insured person becomes legally obligated to pay as damages. These obligations, while interconnected, are clearly two separate obligations.

The trial court determined that neither obliga-

tion was applicable to Alonda Freeman. For the reasons developed by Judge Hood in his opinion, I concur in that determination. As to the determination that the plaintiff, Allstate Insurance Company, has no obligation to Marshall Freeman, either to provide coverage or a defense, I dissent.

The trial court and Judge Hood conclude that, since there is no obligation to provide coverage for the damages caused by Alonda Freeman's tortious act, there is no obligation to defend her. Likewise, it is concluded that, since coverage for the claim is excluded, the obligation to provide representation to· Marshall Freeman is also excluded. I believe that this interpretation of the insurance policy would be clearly contrary to the reasonable expectation of the insured, Marshall Freeman.

Marshall Freeman and Alonda Freeman are husband and wife and were living together. They were both covered by the provisions of the so-called "Homeowner's Policy." We are not furnished with all of the contract provisions, but only with what the parties construed to be relevant portions. Accordingly, I limit my interpretation of the contract to those provisions cited as controlling and relevant.

I disagree with the conclusion that the claim against Marshall Freeman is a simple derivative claim and should not be covered because it may be categorized as a negligent entrustment claim. The husband is certainly not liable because of any statutory provision such as those which impose liability for the actions of others on the owners of motor vehicles, MCL 257.401; MSA 9.2101, or parents, MCL 318.253; MSA 13.1064(3), MCL 600.2913; MSA 27A.2913. Nor is he liable due to common-law concepts, such as respondeat superior or principal-agent. He is liable only if he acted negligently, the results of the subsequent acts by

Alonda Freeman are proximately related to his negligence, and the subsequent acts could have been reasonably anticipated to occur.

There is no claim set forth that Marshall Freeman handed the gun to his wife or participated in any way in her taking and using the gun, other than having it present in his home. Whether such possession was negligent or not, or even if it was, whether it had a direct causal connection to his wife's tort has not been pled, much less established. Even if there is no coverage for the injury, I see no reason why the exclusion provision should be applicable to the duty to defend. Had it been a child or a stranger who was negligently entrusted with the gun, Marshall Freeman would be entitled to a defense and to coverage for the damages. It is not a theory of derivative liability which determines the plaintiff's obligation, but solely the provision of the policy.

In deciding whether plaintiff assured Marshall Freeman that he was insured, or would be covered or provided with representation, it should be noted that the policy stated: "We will provide a defense with counsel of our choice, even if the allegations are not true." Even if it is ultimately determined that the claim will not be paid because of a subsequently stated exclusion, does that automatically determine that the exclusion is likewise applicable to the duty to defend? Such meaning certainly is not clearly stated, but is ambiguous and would defeat the reasonable expectations of Marshall Freeman as to how he would be protected in the event that suit was brought against him.[1]

---

[1] How can we determine if something is ambiguous? That is determined primarily on the basis of whether it is subject to two possible constructions. Even more difficult, how do we determine what is the reasonable expectation of an "insured"? We submit the following as a fictional scenario of what might occur:

I believe that the insurer is being permitted an exclusion of coverage that would defeat the reasonable expectation of the insured. Since such exclu-

*Insured:* "Mr. Insurance Man, when you sold me this insurance policy, on which I have been paying the premiums, you said it would provide me with protection, that if anybody claimed I had done something wrong, it would provide me with an attorney who would make them prove that I had done something wrong. Further, if I did make a mistake, I would be protected against that claim.

Now I'm in trouble and I would like to have you take care of it.

*Agent:* What is your problem?

*Insured:* My wife is being sued and they claim I also acted improperly and am responsible for what she did.

*Agent:* Oh, yes, we know about that, and unfortunately, you are not covered.

*Insured:* Not covered? What does that mean?

*Agent:* It means you are now not protected; it is out of our hands. It leaves you between a rock and a hard place.

*Insured:* But the policy says I am covered, right here under "Family Liability Protection."

*Agent:* Yes, but in the section down below there are exclusions.

*Insured:* Exclusions? What are those?

*Agent:* Those are the things that we list that we do not cover. It says right here that the claim is for the kind of wrongful acts that the policy does not cover.

*Insured:* But those are wrongful acts of my wife, they are not my wrongful acts.

*Agent:* Oh, yes. But the policy says that we don't cover if there are wrongful acts on the part of an insured.

*Insured:* But it says "intentional or criminal acts of an insured", and I did not commit any such acts.

*Agent:* But your wife did, and she is an insured.

*Insured:* But an "insured" means me, and I did no wrongful acts of that kind. Therefore, that "exclusion" as you call it, doesn't apply to me.

*Agent:* If we had meant that it would only apply to acts by an insured who's being sued, we would have said *the* insured, but here we say *an* insured.

*Insured:* Well, if you mean that why did you not say it? Why did you not say that an insured is not covered for an insured's intentional acts, or criminal acts, or the acts of any other insured of that nature?

*Agent:* Well, that is what *an* insured means.

*Uninsured:* Well, I think that is ambiguous, not fair, and (expletives deleted).

sion was not clearly and unambiguously stated, it should not be permitted.

The crux of the matter is whether "an insured" is clear enough to be readily understood to mean "any insured" or is ambiguous because it can be reasonably construed to mean "that insured" or "the insured." Further, even if there is no technical ambiguity, does that construction defeat the reasonable expectation of the purchaser of the policy?

I now recognize, after dictionary perusal, that "an" is the indefinite article sometimes used in place of "a." Further, "an" is in contrast to "the" and denotes a thing or person not previously noted or recognized.[2] Such distinction would not be clearly recognized in ordinary context. It becomes significant here only after a close, detailed and technical analysis of the policy. It is akin to trying to catch and recognize the distinction between "a" and "the" when read in defining proximate cause concepts. Such fine distinctions may satisfy the law, but leave much to be desired in the art of communication.

We have the benefit of a recent pronouncement of our Supreme Court in *Powers v Detroit Automobile Inter-Insurance Exchange,* 427 Mich 602; 398 NW2d 411 (1986). While the *Powers* case involves no-fault auto insurance, the principles developed are applicable to other fields of insurance. The policy under consideration here is as much a policy of adhesion as is an auto insurance policy. *Id.* at 608. I will not succumb to the temptation to quote extensively from the opinion. Chief Justice WILLIAMS points out that it is the insurance company that writes the policy without any input from the purchaser and that few, if any, read the

---

[2] Dictionary definitions, such as *Webster's New Twentieth Century Dictionary.*

entire policy nor would they understand it if they did. *Id.* Here, as there, there is no public policy that the insurance policy cannot be written to provide an exclusion such as the one contended for by the plaintiff and as construed by the trial court and Judge HOOD. However, it still remains to be determined whether such an exclusion is stated in such a manner as to be effective.[3]

After consideration of a number of pertinent cases, Justice WILLIAMS concludes at 427 Mich 627: "The implication of this rule is not only that ambiguities are to be construed against the insurer, but that the insurer has a positive and affirmative duty to 'make clear' any exclusion." He also stated that an "insurer may not 'escape liability (through) . . . forced construction of the language in a policy' *(Hooper)* or '[t]echnical constructions' *(Peitrantonio)*" and further that " 'the courts have no patience with attempts by a paid insurer to escape liability by taking advantage of an ambiguity, a hidden meaning, or a forced construction of the language in a policy, *when all questions* might have been avoided by a more generous or plainer use of words.' " *Powers,* 628-629, quoting *Hooper v State Mutual Life Assurance Co,* 318 Mich 384; 28 NW2d 331 (1947).

If a simple "y" had been added to "an" to give us "any insured," I would have little basis to dissent. Since this was not done, I would hold, as did Justice WILLIAMS in *Powers,* that, by using proper rules of construction, the stated exclusion should not be applicable to Marshall Freeman.

---

[3] Among those cited by Justice WILLIAMS, we find the following especially relevant: *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321; 314 NW2d 184 (1982); *Pietrantonio v Travelers Ins Co,* 282 Mich 111; 275 NW 786 (1937); *Hooper v State Mutual Life Assurance Co,* 318 Mich 384; 28 NW2d 331 (1947); *Boesky Bros Corp v USF&G Co,* 267 Mich 628; 255 NW 307 (1934); *Francis v Scheper,* 326 Mich 441; 40 NW2d 214 (1949); *DeLand v Fidelity Health & Accident Mutual Ins Co,* 325 Mich 9; 37 NW2d 693 (1949).

Even more persuasive is the adjunct to the rule of construction, the rule of "reasonable expectations." *Powers,* p 631. This does not require an ambiguity. As developed by Justice WILLIAMS and by Justice LEVIN in *State Farm Mutual Automobile Ins Co v Ruuska,* 412 Mich 321; 314 NW2d 184 (1982),[4] which Justice WILLIAMS relies upon, the coverage provided is to be that which an insured person would reasonably expect to be provided, and "[i]f the insurer intends to exclude such coverage . . . it is simple enough to say so." *Powers,* p 633.

---

[4] See also the Court of Appeals decision therein affirmed, *State Farm Mutual Automobile Ins Co v Ruuska,* 90 Mich App 767, 777-778; 282 NW2d 472 (1979), as follows:

> In addressing this issue, we are guided by some general rules. Insurance policies must be construed in accord with the ordinary and popular sense of the language used therein. *Michigan Mutual Liability Co v Mesner,* 2 Mich App 350, 353; 139 NW2d 913 (1966). Insurance policies drafted by the insurer must also be construed in favor of the insured to uphold coverage. *Shepard Marine Construction Co v Maryland Casualty Co,* 73 Mich App 62, 64; 250 NW2d 541 (1976). This same rule applies to exclusion provisions in the policy. *Kalamazoo Aviation, Inc v Royal Glove Ins Co,* 70 Mich App 267, 270; 245 NW2d 754 (1976). To be given full effect, an insurer has a duty to clearly express the limitations in its policy. *Francis v Scheper,* 326 Mich 441, 447-448; 40 NW2d 214 (1949), *Union Investment Co v Fidelity & Deposit Co of Maryland,* 549 F2d 1107, 1110 (CA 6, 1977), and *Ornamental Iron & Stair Co v General Accident & Life Assurance Corp, Ltd,* 68 Mich App 259, 263; 242 NW2d 544 (1976). A technical construction of policy language which would defeat a reasonable expectation of coverage is not favored. *Crowell v Federal Life & Casualty Co,* 397 Mich 614, 623; 247 NW2d 503 (1976).

Justice LEVIN's opinion in *Powers, supra,* p 645 states: "A policy of automobile insurance is not an ordinary contract. It is the classic contract of adhesion."

I would reverse as to Marshall Freeman and require plaintiff to provide a defense. A determination of whether plaintiff is also required to cover any claim against Mr. Freeman should be deferred until after trial.