831 F.2d 1063
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ALLSTATE INSURANCE CO., Plaintiff-Appellee,
v.
Marc DAVIS, et al., Defendants-Appellants.
 No. 86-1660.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1987.
 
 Before LIVELY, Chief Judge, MILBURN and RYAN, Circuit Judges.
 LIVELY, Chief Judge.
 
 
 1
 This diversity case concerns an insurer's duty to defend and indemnify its insured under a homeowner's policy. Allstate, the insurer, sought a declaration that the insured's act of shooting various family members falls within an exclusion to coverage. The issue on appeal is whether the trial court properly granted summary judgment in favor of the insurer where the parties disagreed over the version of the policy exclusion that applied at the time of the shooting, and the defendants alleged that the insured was mentally impaired at that time. We hold that because mental capacity is relevant to only one version of the exclusion, and defendants raised an issue of the insured's mental capacity at the time of the shooting, there exists a genuine issue of material fact concerning which version of the exclusion language applies. Accordingly, we reverse and remand the case to the district court.
 
 I.
 
 2
 The insured, Marc Davis, was convicted of second degree murder following an incident in which he killed his sister-in-law and wounded his wife and his brother-in-law, the husband of the victim who died. Davis committed the assaults and homicide with a handgun following an argument with his wife.
 
 
 3
 Prior to Davis's conviction for second degree murder his wife and brother-in-law sued him for damages in a state court. Allstate accepted defense of that action under a reservation of rights, and provided defense counsel. While the state tort action was pending, Allstate filed the present action in district court, seeking a declaratory judgment that the insured's act for which the state court plaintiffs sought damages was within an exclusion contained in the homeowner's policy, and therefore Allstate had no duty to defend or to indemnify its insured. The complaint also sought a declaration that the insured's wife and minor children, who were also plaintiffs in the state action, were "insured persons" within a different exclusionary clause of the policy.
 
 
 4
 Marc Davis's criminal trial was delayed because Davis initially had been found incompetent to stand trial and had been held at a state forensic center. Some two and one-half years after the shooting incident, Marc Davis did stand trial and was convicted of second degree murder. Shortly thereafter, Allstate filed a motion for summary judgment in the present action, and the defendants responded. Neither side filed affidavits. The district court granted the motion, concluding that "Allstate has no duty to defend or indemnify Marc Davis." The defendants in the district court, plaintiffs in the pending state court action, appeal. A default was entered against Marc Davis and he has not appealed.
 
 II.
 
 5
 Allstate did not file a copy of the homeowner's policy issued to Marc Davis with its complaint or with its motion for summary judgment. In its complaint Allstate alleged that at the time of the shooting Marc and Diana Davis were insured under homeowner's policy No. 006-535-375, and that the policy contained the following language:
 
 Exclusions--Losses We Do Not Cover
 
 6
 (1) We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 
 
 7
 In their answer the defendants specifically denied these allegations. They alleged that Marc Davis was insured under homeowner's policy No. 06-535-375 and that the exclusion in question denied coverage for "bodily injury... which is either expected or intended from the standpoint of the insured." The defendants did not file policy 06-535-375 with their answer. The answer also denied that anyone except Marc Davis was an "insured person" as defined in the policy.
 
 
 8
 Allstate argued in the district court, as it does here, that the plaintiffs in the state court action were seeking damages for conduct of the insured that was excluded from coverage of the homeowner's policy. Relying on the language it asserted the policy contained, Allstate maintained that the bodily injury suffered by the state court plaintiffs was such as "may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." Allstate argued that Marc Davis committed an intentional and criminal act in shooting the victims and that he intended, in fact, to injure them.
 
 
 9
 The defendants responded by asserting that Marc Davis was temporarily insane at the time of the shooting, and attached a psychiatrist's report to its "answer" to Allstate's motion for summary judgment. The defendants contended that because Marc Davis suffered from mental incapacity or insanity at the time of the shooting, there was a genuine issue as to whether he was capable of forming the intention or expectation required to bring his conduct within the exclusion under their version of the policy language. The defendants also contended there was a genuine issue as to the language of the actual policy issued by Allstate.
 
 III.
 
 10
 In granting Allstate's motion for summary judgment, the district court concluded that it made no difference which version of the intentional act or injury exclusion was actually contained in the policy in force at the time of the shooting. The court stated: "A person who picks up a gun which he knows to be loaded, points it at another human being and discharges it, must be deemed to have intended the act and expected that injury will result." The district court found that under Allstate's version of the exclusion there would be no coverage because the injuries could be expected to result from the insured's criminal acts. The court also found that under the defendants' version of the exclusion the result would be the same because the injuries would be "expected" from the standpoint of the insured.
 
 
 11
 In addition, the district court held that Marc Davis's conviction for second degree murder "establishes the requisite intent in this declaratory action." The court reached this conclusion because second degree murder is a specific intent crime requiring proof of the intent to kill or cause great bodily harm. The court held, further, that Davis's conviction is "conclusive" on the issue of insanity.
 
 
 12
 The district court's opinion raises two distinct issues. First, whether under Michigan law the insured's mental capacity is relevant to applying either version of the policy exclusion. Second, whether Davis's conviction for second degree murder is conclusive on the question of his mental capacity at the time of the shooting. If Davis's conviction is not conclusive on the issue of mental capacity, as we hold it is not, and if wider only one version of the policy exclusion Davis's mental capacity is relevant to applying the exclusion, as we also find, then there exists a genuine issue of material fact concerning which policy exclusion applies.
 
 IV.
 A.
 
 13
 In support of its conclusion that one who aims a loaded gun at another and discharges it "must be deemed to have intended the act and expected that injury will result" the district court cited Kermans v. Pendleton, 62 Mich.App. 576 (1975). Kermans addressed a different issue than that involved in the present case. The insurance policy in Kermans excluded coverage for "bodily injury ... caused feloniously or intentionally by or at the direction of an Insured." The issue was whether, under the facts in Kermans, there was a difference between intended felonious acts and unintended felonious results. In holding that there was no difference, the Michigan Court of Appeals agreed with the trial court that absent an allegation of self-defense or accident pointing a firearm at another and discharging it is itself an intentional act and one whereby the result could be anticipated. However, there was no issue of the mental capacity of the assailant in Kermans, and the exclusion language was different. Kermans might be controlling if it were established that the actual policy language was that asserted by Allstate. There would seem to be no real difference between excluding "bodily injury caused feloniously" and "bodily injury which may reasonably be expected to result from criminal acts." On the other hand, Kermans offers no support for holding the act of pointing and discharging a weapon is excluded from coverage where the exclusion is limited to bodily injury "which is either expected or intended from the standpoint of the insured," and the insured is claimed to have been insane at the time of the act.
 
 
 14
 The district court also relied on State Farm Fire & Casualty Co. v. Jenkins, 147 Mich.App. 462 (1985). The issue in Jenkins was whether an exclusion for "bodily injury or property damage which is intended or expected by the insured" created one or two exceptions. Concluding that a distinction should be drawn between "intentional" and "expected," the court found that "or" should be read as a true disjunctive. The test of an expected injury is whether "the injury was the natural, foreseeable, expected, and anticipatory result of an intentional act." As in Kermans, there was no issue of the insured's mental capacity.
 
 
 15
 One decision cited by the district court concerned a policy exclusion that employed the exact language which the defendants in this case contend was contained in Marc Davis's policy. See Group Insurance Co. of Michigan v. Morelli 111 Mich.App. 510 (1981). The principal question in Morelli was whether an insurer can use Michigan's provision for declaratory judgment actions to seek an early resolution of liability coverage when claiming that a pending tort action against its insured is based on acts that are excluded from the coverage of its policy. The court decided this question in favor of the insurer, but concluded that no remand was necessary. The underlying tort action sought damages for an assault and, as in Kermans, there was no defense of accident or self-defense. Under these circumstances the court of appeals followed Kermans and found that the insured's act was intentional and the injury to the claimant was the "natural, foreseeable, expected and anticipatory result" of that intentional act. Morelli, 111 Mich.App. at 516. Again, however, there was no issue of the insured's mental capacity.
 
 B.
 
 16
 The Michigan Court of Appeals has decided a plethora of cases dealing with various versions of intentional act or injury exclusions in liability insurance policies, and the results are confusing. Much of the confusion arises in cases where the court attempted to determine whether one who performed an intentional act also intended the resulting Injury. In Morrill v. Gallagher, 370 Mich. 578, 588 (1963), the Michigan Supreme Court held that an exclusion of coverage for "injury ... caused intentionally by ... the insured" relieved the insurer only if it showed that both the act and the injury were intended. See also Jenkins, 147 Mich.App. at 466 ("In Morrill..., the Supreme Court held that, where an insurance policy excludes intentional injury, both an intentional act and an intentional injury must be demonstrated."). In many of the cases, the intentional nature of the act was conceded, but the question in dispute was whether the injury was intended. E.g., Putman v. Zeluff, 372 Mich. 553 (1964); Vermont Mutual Insurance Co. v. Dalzell, 52 Mich.App. 686 (1974).
 
 
 17
 This problem does not exist in the present case. If Allstate's version of the exclusion controls, there would be no coverage because the injuries resulted from a criminal act and were such as would "reasonably be expected to result" from that act. Since the exclusion is in the disjunctive, it would not be necessary to determine whether the act or injury was intentional; the fact that the act was criminal and was such that injury would reasonably be expected to result would suffice. Under the defendants.' version of the exclusion, the nature of the act--whether intended or not--is not mentioned. The exclusion applies to bodily injury "which is either expected or intended from the standpoint of the Insured." The test is clearly not whether injury would reasonably be expected to result; that is language of an objective standard. "From the standpoint of the Insured" creates a subjective standard. The mental condition of the insured at the time of the injury-causing act clearly is material to determining whether a given result was expected or intended from his standpoint. Thus, the insured's mental condition may or may not be relevant to determining if coverage is excluded, depending on which version of the exclusion applies.
 
 C.
 
 18
 As noted earlier, the district court held that Marc Davis's conviction for second degree murder "establishes the requisite intent in this declaratory action" and is "conclusive" oil the issue of insanity. The district court found support for these conclusions in Yother v. McCrimmon, 147 Mich.App. 130 (1985), where the court held that an insured's guilty plea to a charge of aggravated assault was sufficient to establish that the resulting injury was within an insurance policy's exclusion for bodily injuries either expected or intended from the standpoint of the insured. The court of appeals in Yother distinguished an earlier Michigan Supreme Court case which held that "a criminal conviction after trial, or plea, or payment of a fine is not admissible as substantive evidence of conduct at issue in a civil case arising out of the same occurrence." Wheelock v. Eyl, 393 Mich. 74, 79 (1974). The court stated that in Wheelock the injured party sought to use the insured's conviction to establish liability for the injury, whereas in Yother an insurer used the conviction to show the applicability of a policy exclusion. Yother, 147 Mich.App. at 134. The same reasoning was applied in Transamerica Insurance Co. v. Anderson, 159 Mich.App. 441, 445 (1987), where the court stated, without discussion, that "Wheelock does not apply in a proceeding to determine insurance coverage."
 
 
 19
 The Michigan Court of Appeals has reached this conclusion in Yother and Anderson without applying the customary requirements of collateral estoppel. In fact, in Jenkins the court agreed that the victim's representative was not collaterally estopped by the insured's guilty plea from litigating the issue of whether the insured intended or expected the injury since she (the representative) was not a party to the criminal action; the court nevertheless held that the trial judge properly found no issue of material fact. Jenkins, 147 Mich.App. at 468 n. 2. Thus, the court of appeals apparently has applied some other unidentified rule of preclusion in cases such as Yother and Anderson.
 
 
 20
 So far as the opinions disclose, in none of the cases following this Michigan rule of preclusion did the parties contend that the intentional act or injury exclusion was inapplicable because the insured was mentally impaired or insane at the time of the act causing the injury. We beHeve the element of insanity in the present case distinguishes it from the cases relied upon by the district court. This is particularly true if the actual language of the policy excluded injuries intended or expected "from the standpoint of the insured." In that case, the objective "reasonable person" standard would not apply, and the insured's mental condition world be extremely important in determining what the insured may have intended or expected. Thus, unless there was a finding in the criminal trial, after the issue had been raised and litigated, on Davis's mental condition as it relates to his intentions or expectations, we find no basis in this record for the district court's holding that the "murder conviction establishes the requisite intent in this declaratory action" and the "conviction is conclusive on the issues of self defense and insanity." The transcript of Davis's criminal trial was not filed in the present action. We are told that Davis did not testify at that trial and no deposition of Davis has been filed in the record before us. References were made in papers filed in the district court to depositions taken in the state court tort action, but none of those depositions can be found in this record. In short, we do not know what issues were raised and decided in the criminal case. Until the Supreme Court of Michigan holds that the unusual non-collateral estoppel rule of preclusion fashioned by the Michigan Court of Appeals applies to a case such as the one now before us, we decline to so extend it.
 
 V.
 
 21
 In order to be entitled to summary judgment a movant must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Anderson v. Liberty Lobby, Inc., --U.S. ----, 106 S.Ct. 2505, 2510 (1986). In this case Allstate did neither. An insurer which relies on exclusion clauses in a policy has the burden of proof as to their application. Morrill v. Gallagher, 370 Mich. at 587. Furthermore, Michigan follows the universally accepted rule that the language of an insurance policy should be strictly construed against the insurer and in favor of the insured. Denham v. Bedford, 407 Mich. 517, 531-32 (1980). Where there is ambiguity in language limiting coverage of the policy, this rule applies with particular force. Ford Motor Credit Co. v. Aetna Casualty & Surety Co., 717 F.2d 959, 961 (6th Cir.1983).
 
 
 22
 In their answer denying that the policy number and exclusion language recited by Allstate were actually contained in the policy covering Marc Davis, the defendants presented a genuine issue of material fact concerning which version of the language applied. Allstate did nothing to remove this issue with its unsupported motion for summary judgment. The defendants' answer also raised an issue of Davis's mental capacity at the time of the shooting by asserting as an affirmative defense that Marc Davis suffered from mental incapacity or was insane at that time. As we have noted, Davis's mental capacity is relevant to the defendants' version of the exclusion, but not to Allstate's. As those opposing a motion for summary judgment, the defendants were entitled to an inference, on this record, that their version was correct. Without showing that its version of the exclusion was the one actually contained in the policy, Allstate was not entitled to judgment as a matter of law.
 
 
 23
 Only if the question of which version of the exclusion language applied was not material would Allstate be entitled to summary judgment. Since we have concluded that the issue of fact is material, it follows that the district court committed reversible error when it entered summary judgment in favor of Allstate.
 
 
 24
 The judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion.